**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____

RAYMOND LARMAR BROWN, et al.
      Plaintiffs

  v.          1:20-cv-7907-NHL-KMW

CHARLES WARREN, et al.
       Defendants   Civil Action
_____


**DEFENDANTS' PRE-HEARING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUCTION AND ORDER TO SHOW CAUSE**


          **ZEFF LAW FIRM, LLC**
          Gregg L. Zeff, Esquire #042531988
          100 Century Parkway
          Suite 160
          Mount Laurel, NJ 08054
          (856) 778-9700 (T)
          (609) 534-0992 (F)
          GZeff@glzefflaw.com


April 19, 2021

## **TABLE OF AUTHORITIES**

**Cases**

*City of Birmingham Relief & Ret. Sys. v. ExxonMobil Corp.*, DOCKET NO. A-4279-17T3 (N.J. Super. May. 6, 2019)..................................................................................................... 14

*Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv.*, 724 F.3d 377, 382 (3d Cir. 2013) ........................................................................................................................ 19

*Corp. Synergies*, No. 18-3246 (3d Cir. Jun. 4, 2019) .................................................. 12

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)........................................................... 3, 4

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)............... 18

*Harvey v. Chertoff*, 263 F. App'x 188, 191 (3d Cir. 2008) ........................................... 3

*Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) ..................................................... 19

*Hope v. Warden York County Prison, No. 20-1784* (3d Cir. 2020)................................... 4, 6, 7, 8

*Hope v. Warden York County Prison*, No. 20-1784 (3d Cir. 2020)...................................... 4

*Illinois, ex. Rel. Hartigan v. Peter*, 871 F.2d 1336, 1338, 1342 (7th Cir. 1989) ...................... 13

*In re Venezia*, 191 N.J. 259, 278 n.7 (2007) ................................................................. 14

*KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004)........................... 16, 18

*Lenin v. Borough of Tenafly,* 515 F. App'x 114, 117 (3d Cir. 2013)................................... 19

*Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353 (5th Cir. 1971)………………………………………………………………………………12, 13

*Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) .................................................. 19

*Samuel Sheitelman, Inc. v. Hoffman*, 106 N.J. Super. 353, 356 (App. Div. 1969)...................... 14

*Sims v. Greene*, 161 F.2d 87 (3d Cir. 1947) ............................................................... 11

*Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994) ................................................... 19

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) ................................................................. 3

*Wragg v. Ortiz* 1:20-cv-05496 (D.N.J.) ...................................................................... 8, 9

**Rules**

F.R.Ev. 601 ............................................................................................................. 16, 17

Fed.R.Civ.Pr. 65(b)(3) ............................................................................................. 5

F.R.Ev. 702/703 ....................................................................................................... 17

N.J.Ct.R. 1:4-4 ........................................................................................................ 16, 17

1     **I.**     **Overview of the Facts**

2

3          The Cumberland County Jail ("the Jail"), through Defendants has tirelessly worked to

4     contain the COVID-19 virus and its effect on inmates. The allegations presented to this court

5     by Plaintiffs are not only misleading, but, in many instances, they are factually inaccurate

6     and brought by a series of correctional officers that have been disciplined and fired by the

7     Warden.

8          As  people across our country scramble to compete for an opportunity to get the

9     COVID-19 vaccine, all inmates and officers at the Jail have been offered vaccination.  And

10     despite the Jail making the vaccine available to inmates  less than 20% have accepted and all

11     of the named Plaintiffs have refused vaccination.   Also, recently, rapid antigen testing,

12     approved by the CDC is available at the Jail to inmates.

13          The evidence will show that Cumberland County and Cumberland County Jail acted

14     quickly in an effort to mitigate COVID-19.   Procedures were instituted in March 2020 to

15     educate staff and inmates about COVID, and immediate efforts were made to increase

16     cleaning and cleaning supplies.  Visitation was limited and then stopped.  Quarantining of

17     new inmates was instituted in March, 2020.  By April, all inmates and staff had masks,

18     temperatures were taken, medical monitored health and isolation and quarantine protocols

19     were instituted.  Unfortunately, the Jail, like the rest of the planet, suffered from low supplies

20     of personal protection equipment such as masks and gowns.   As on the rest of the planet,

21     early COVID-19 testing was difficult to obtain and results were delayed often beyond the 15-

22     day quarantine period.   The evidence will show that the County and Jail worked diligently

23     and together with medical provider CFG to obtain appropriate testing and PPE.  The court

1   will also hear that the Warden and Jail relied on the advice of CFG and its medical staff to

2   determine testing, quarantining and isolation of inmates throughout the pandemic.

3          As the pandemic and time progressed, CDC guidelines changed and supplies

4   and testing became more available, the Jail was able adapt and provide appropriately.  Safety

5   procedures have been in place at the Cumberland County Jail on almost a contemporaneous-

6   basis with when CDC, New Jersey Department of Health, and Cumberland County

7   Department of Health guidelines have been issued.

8          The court will soon hear from Plaintiffs and witnesses for the Plaintiffs with limited

9   knowledge of the policies, procedures, protocols and processes the County, the County

10  Department of Health, the Jail, CFG and the medical provider have gone through to mitigate

11  against the pandemic.

12         The court will also hear from the Defense witnesses that the Jail and its COVID

13  infection and death rates are no worse than the state, other facilities and the public at large.

14  Far from deliberate indifference, the Jail and Warden have acted with reasonable diligence

15  and care under the most trying of circumstance.

16

17  **II.    Overview of the Law**

18

19       **a.  Because Plaintiffs do not establish that the Jail was deliberately indifferent;**
20            **they do not establish any constitutional violations.**

21

22     *Hope v. Warden York County Prison*, No. 20-1784 (3d Cir. 2020)  and the Third Circuit

23  Model Jury Charges are guideposts for this court in this matter.   *Hope*, and the Model Charges

24  show the enormous burden Plaintiffs must overcome to succeed in this matter.  As guidance for

25  how this Court should view the facts here, *Hope* observed that "in essence they

1  [Plaintiff/Petitioner/Detainees] argue that the Government must eliminate entirely their risk of

2  contracting COVID-19.  That task is not the constitutional standard, however.  *Hope* noted at 24

3  that "important here—and largely ignored by the District Court and Petitioners—are the

4  legitimate objectives and difficulties of managing a detention facility, *Hubbard II*, 538 F.3d at

5  233, and the objectives of immigration detention: ensuring appearance at detention proceedings

6  and protecting the public from harm.  *See DiBuono*, 713 F.2d at 993; 8 U.S.C. Section 1226(c)."

7            Here, faced with an unprecedented pandemic,  the Warden and Jail have relied

8  upon the CDC, State Department of Health, County Department of Health and CFG (Health care

9  provider to the Jail) for guidance and instruction on how to mitigate this disaster.   In so doing,

10  the court will hear that the Warden and Jail implemented all procedures advised by the health

11  professionals.  These efforts have led to an infection rate that mirrors that of the County itself.

12  Despite these efforts, inmates have contracted the virus and sadly, one inmate has died.

16  **The Third Circuit Model Jury Charges provide the standard for this court to follow.**
17  **They are as follows:**

19  **4.11.1            Section 1983 – Conditions of Confinement –**
20  **Convicted Prisoner –**
21  **Denial of Adequate Medical Care**

23  **Model**

25            Because inmates must rely on prison authorities to treat their serious medical needs,
26  the government has an obligation to provide necessary medical care to them.  In this case,
27  [plaintiff] claims that [defendant] violated the Eighth Amendment to the United States
28  Constitution by showing deliberate indifference to a serious medical need on [plaintiff's]
29  part.  Specifically, [plaintiff] claims that [briefly describe plaintiff's allegations].

31            In order to establish [his/her] claim for violation of the Eighth Amendment,
32  [plaintiff] must prove each of the following three things by a preponderance of the
33  evidence:

First:  [Plaintiff] had a serious medical need.

Second:  [Defendant] was deliberately indifferent to that serious medical need.

Third:  [Defendant's] deliberate indifference caused [harm] [physical injury][1] to [plaintiff].

I will now proceed to give you more details on the first and second of these three requirements.

First, [plaintiff] must show that [he/she] had a serious medical need.  A medical need is serious, for example, when *[include any of the following that are warranted by the evidence]*:

- A doctor has decided that the condition needs treatment; or

- The problem is so obvious that non-doctors would easily recognize the need for medical attention; or

- Denying or delaying medical care creates a risk of permanent physical injury; or

- Denying or delaying medical care causes needless pain.

Second, [plaintiff] must show that [defendant] was deliberately indifferent to that serious medical need.  [Plaintiff] must show that [defendant] knew of an excessive risk to [plaintiff's] health, and that [defendant] disregarded that risk by failing to take reasonable measures to address it.

[Plaintiff] must show that [defendant] actually knew of the risk.  If [plaintiff] proves that there was a risk of serious harm to [him/her] and that the risk was obvious, you are entitled to infer from the obviousness of the risk that [defendant] knew of the risk. [However, [defendant] claims that even if there was an obvious risk, [he/she] was unaware of that risk.  If you find that [defendant] was unaware of the risk, then you must find that [he/she] was not deliberately indifferent.][2]

There are a number of ways in which a plaintiff can show that a defendant was deliberately indifferent, including the following.  Deliberate indifference occurs when:

---

[1]  See Comment for a discussion of whether harm (and physical injury in particular), constitutes an element of this claim.

[2]  It is unclear who has the burden of proof with respect to a defendant's claim of lack of awareness of an obvious risk.  *See* Comment.

*[include any of the following examples, or others, that are warranted by the evidence]*

- A prison official denies a reasonable request for medical treatment, and the official knows that the denial exposes the inmate to a substantial risk of pain or permanent injury;

- A prison official knows that an inmate needs medical treatment, and intentionally refuses to provide that treatment;

- A prison official knows that an inmate needs medical treatment, and delays the medical treatment for non-medical reasons;

- A prison official knows that an inmate needs medical treatment, and imposes arbitrary and burdensome procedures that result in delay or denial of the treatment;

- A prison official knows that an inmate needs medical treatment, and refuses to provide that treatment unless the inmate is willing and able to pay for it;

- A prison official refuses to let an inmate see a doctor capable of evaluating the need for treatment of an inmate's serious medical need;

- A prison official persists in a particular course of treatment even though the official knows that the treatment is causing pain and creating a risk of permanent injury.

[In this case, [plaintiff] was under medical supervision.  Thus, to show that [defendant], a non-medical official, was deliberately indifferent, [plaintiff] must show that [defendant] knew that there was reason to believe that the medical staff were mistreating (or not treating) [plaintiff].]

[Mere errors in medical judgment do not show deliberate indifference.  Thus, a plaintiff cannot prove that a doctor was deliberately indifferent merely by showing that the doctor chose a course of treatment that another doctor disagreed with. [However, a doctor is deliberately indifferent if [he/she] knows what the appropriate treatment is and decides not to provide it for some non-medical reason.] [However, a doctor is deliberately indifferent by arbitrarily interfering with a treatment, if the doctor knows that the treatment has worked for the inmate in the past and that another doctor prescribed that specific course of treatment for the inmate based on a judgment that other treatments would not work or would be harmful.]]

**Comment**

Applicability of the Eighth Amendment standard for denial of adequate medical

care.  The Eighth Amendment applies only to convicted prisoners,[3] *see, e.g., Whitley v. Albers*, 475 U.S. 312, 318 (1986), and it appears that the Amendment does not apply to a convicted prisoner until after the prisoner has been sentenced, *see Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989) (dictum).[4]  Instruction 4.11 reflects the Eighth Amendment standard concerning the denial of medical care.

The Eighth Amendment standard may be more difficult for plaintiffs to meet than the standard that applies to claims regarding treatment of pretrial detainees or of prisoners who have been convicted but not yet sentenced.  Although "the contours of a state's due process obligations to [pretrial] detainees with respect to medical care have not been defined by the Supreme Court. . . . , it is clear that detainees are entitled to no less protection than a convicted prisoner is entitled to under the Eighth Amendment." *A.M. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 584 (3d Cir. 2004); *see City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983) (stating that the "due process rights of a person [injured while being apprehended by police] are at least as great as the Eighth Amendment protections available to a convicted prisoner"); *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners . . . it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial.").

In *Hubbard v. Taylor*, a nonmedical conditions-of-confinement case, the Third Circuit held that the district court committed reversible error by analyzing the pretrial detainee plaintiffs' claims under Eighth Amendment standards.  *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005).  The *Hubbard* court stressed that while the Eighth Amendment standards have been taken to establish a floor below which treatment of pretrial detainees cannot sink, those standards do not preclude the application of a more

---

[3]   *Betts v. New Castle Youth Development Center*, 621 F.3d 249 (3d Cir. 2010), applied Eighth Amendment standards to a claim arising from injuries to a youth who had been "adjudicated delinquent" and "had been committed to ... a maximum security program for serious [juvenile] offenders," *id.* at 252, 256 n.8.

[4]   Addressing substantive and procedural due process claims arising from placement in restrictive confinement, the Court of Appeals has treated as pretrial detainees two plaintiffs who – during the relevant period – were awaiting resentencing after the vacatur of their death sentences.  *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007) ("Although both Stevenson and Manley had been convicted at the time of their complaint, they are classified as pretrial detainees for purposes of our constitutional inquiry.... Their initial sentences had been vacated and they were awaiting resentencing at the time of their complaint and for the duration during which they allege they were subjected to due process violations.... The Warden does not contest the status of the appellants as pretrial detainees for purposes of this appeal.").

protective due process standard to pretrial detainees under *Bell v. Wolfish*, 441 U.S. 520 (1979). *See Hubbard*, 399 F.3d at 165-66. While *Hubbard* was a nonmedical conditions-of-confinement case, the *Hubbard* court suggested that its analysis would apply to all conditions-of-confinement cases, including those claiming denial of adequate medical care. *See id.* at 166 n.22.[5]

Content of the Eighth Amendment standard for denial of adequate medical care. Because inmates "must rely on prison authorities to treat [their] medical needs," the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Eighth Amendment claims concerning denial of adequate medical care constitute a subset of claims concerning prison conditions. In order to prove an Eighth Amendment violation arising from the conditions of confinement, the plaintiff must show that the condition was "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), and also that the defendant was "'deliberate[ly] indifferen[t]' to inmate health or safety," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference to the inmate's serious medical needs violates the Eighth Amendment, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

_____

[5] On some prior occasions, the Third Circuit has indicated that the standard for pretrial detainees is identical to that for convicted prisoners. *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs."). In other cases, the court has noted, but not decided, the question whether pretrial detainees should receive more protection (under the Due Process Clauses) than convicted prisoners do under the Eighth Amendment. *See, e.g., Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993) ("It appears that no determination has as yet been made regarding how much more protection unconvicted prisoners should receive. The appellants, however, have not raised this issue, and therefore we do not address it."); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 n.5 (3d Cir. 2003); *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 n.5 (3d Cir. 2005) ("[I]n developing our jurisprudence on pre-trial detainees' suicides we looked to the Eighth Amendment ... because the due process rights of pre-trial detainees are at least as great as the Eighth Amendment rights of convicted and sentenced prisoners"); *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017) (noting that "while the detention of sentenced inmates is governed by the Eight Amendment, the treatment of pretrial detainees is governed by the Due Process Clause," but finding no need to delve into any differences, because the suit was against supervisory officials for the creation of policies and practices, which requires deliberate indifference, and there was no genuine dispute of material fact as to deliberate indifference). *See also E. D. v. Sharkey*, 928 F.3d 299, 306-07 (3d Cir. 2019) (holding that "immigration detainees are entitled to the same due process protections" as pretrial detainees).

As noted, in cases regarding medical care, the first (or objective) prong of the Eighth Amendment test requires that the plaintiff show a serious medical need. A medical condition that "has been diagnosed by a physician as requiring treatment" is a serious medical need. *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003). So is a medical problem "that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J.1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). The serious medical need prong is also met in cases where "[n]eedless suffering result[s] from a denial of simple medical care, which does not serve any penological purpose." *Atkinson*, 316 F.3d at 266. Likewise, "where denial or delay causes an inmate to suffer a life long handicap or permanent loss, the medical need is considered serious." *Lanzaro*, 834 F.2d at 347. Denial of access to potable water for two or three days, especially when the prisoner is menstruating, can constitute an Eight Amendment violation, as can the denial of sanitary napkins and medications for migraines and menstrual cramps. *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210 (3d Cir. 2015). *Cf. Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015) ("Because there is no authority establishing—let alone 'clearly' establishing—a right for prisoners to receive treatment for conditions resulting in impotence and/or infertility, such as retrograde ejaculation or erectile dysfunction, Appellants are entitled to qualified immunity.").

As to the second (or subjective) prong of the Eighth Amendment test, mere errors in medical judgment or other negligent behavior do not meet the mens rea requirement. *See Estelle*, 429 U.S. at 107.[6] Rather, the plaintiff must show subjective recklessness on the defendant's part. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.[7] However,

---

[6] By contrast, a plaintiff can prove deliberate indifference by showing that a physician knew what the appropriate treatment was and decided not to provide that treatment for a non-medical reason such as cost-cutting. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("[I]f the inadequate care was a result of an error in medical judgment on Dr. O'Carroll's part, Durmer's claim must fail; but, if the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non medical factors, then Durmer has a viable claim.").

Similarly, though "mere disagreements over medical judgment do not state Eighth Amendment claims," *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990), a prison doctor violates the Eighth Amendment when he or she "deliberately and arbitrarily . . . 'interfer[es] with modalities of treatment prescribed by other physicians, including specialists, even though these modalities of treatment ha[ve] proven satisfactory,'" *id.* at 111 (quoting amended complaint).

[7] The subjective "deliberate indifference" standard for Eight Amendment conditions of

the plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  In sum, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

The plaintiff can use circumstantial evidence to prove subjective recklessness: The jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.  However, the jury need not draw that inference; "it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety." *Id.* at 844.  The defendants "might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.*[8]

Two bracketed sentences in the model reflect the fact that a defendant will escape liability if the jury finds that even though the risk was obvious, the defendant was unaware of the risk.  A footnote appended to those sentences notes some uncertainty concerning the burden of proof on this point.  On the one hand, the *Farmer* Court's references to defendants "prov[ing]" and "show[ing]" lack of awareness suggest that once a plaintiff proves that a risk was obvious, the defendant then has the burden of proving lack of awareness of that obvious risk.  On the other hand, the factual issues concerning the risk's obviousness and the defendant's awareness of the risk may be closely entwined, rendering it confusing to present the latter issue as one on which the defendant has the burden of proof.  Accordingly, the model does not explicitly address the question of burden of proof concerning that issue.

"[E]ven officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"; a defendant "who act[ed] reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 844-45.

The Third Circuit has enumerated a number of ways in which a plaintiff could show

---

confinement claims is distinct from the objective "deliberate indifference" standard for municipal liability through inadequate training, supervision or screening. *See Farmer*, 511 U.S. at 840-41 (distinguishing *City of Canton v. Harris*, 489 U.S. 378 (1989)); *supra* Instruction 4.6.7 cmt. & Instruction 4.6.8 cmt.

[8]  However, a defendant "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8.

deliberate indifference.  Deliberate indifference exists, for example:

- "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury' ";[9]

- "where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care' ";[10]

- where "necessary medical treatment [i]s ... delayed for non-medical reasons";[11]

- "where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates' ";[12]

---

[9] *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976)); *see Pearson v. Prison Health Serv.*, 850 F.3d 526, 540 (3d Cir. 2017) (reversing summary judgment for a nurse who was told that prisoner was suffering from excruciating pain at a time he was not being treated by a physician, refused to examine him in his cell, forced him to crawl to a wheelchair to obtain medical treatment, and did nothing but order him placed in the infirmary overnight despite recognized signs of appendicitis); *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017) (finding complaint sufficient because it alleged that medical personnel were forbidden from speaking with mentally ill prisoners in solitary confinement for more than one or two minutes at a time through solid steel doors, relied on medication rather than counseling, failed to evaluate the efficacy of the medication even when told that it was not effective, and substituted solitary confinement for treatment). *Palakovic* also made clear that such a claim is distinct from a failure to prevent suicide claim.

[10] *Id.* (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir.1985)).

[11] *Id.* (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir.1985)); *cf. Parkell v. Danberg*, 833 F.3d 313, 339 (3d Cir. 2016) (noting that while logistical constraints unrelated to medical judgment typically do not excuse failure to provide adequate medical care, "there is a difference between actors who are actually responsible for these logistical constraints (or capable of remedying them) and actors who are not," and therefore medical contractors who do not control the transportation practices of the Department of Corrections are not responsible for those deficiencies).

[12] *Id.* at 347 (quoting *Todaro v. Ward*, 565 F.2d 48, 53 (2d Cir.1977)).  *Compare Byrd v. Shannon*, 715 F.3d 117, 127-28 (3d Cir. 2013) (delays in provision of eye drops for glaucoma did not establish deliberate indifference where the longest delay was attributable to inmate, who was "responsible [under a self-medication program] for the renewal of his prescriptions," and

- where prison officials "condition provision of needed medical services on the inmate's ability or willingness to pay";[13]

- where prison officials "deny access to [a] physician capable of evaluating the need for ... treatment" of a serious medical need;[14]
- "where the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.' "[15]

When a prisoner is under medical supervision, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). The "same division of labor concerns that underlie that rule apply when a nurse knows that a prisoner is under a physician's care and has no reason to believe the doctor is mistreating the prisoner." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 540 n.4 (3d Cir. 2017).

Other sets of model instructions include, as an element of the claim, that the defendant's deliberate indifference to the plaintiff's serious medical need caused harm to the plaintiff. *See, e.g.*, Fifth Circuit (Civil) Instruction 10.6; Eighth Circuit (Civil) Instruction 4.31; Ninth Circuit (Civil) Instruction 11.11. It is somewhat difficult to discern from the caselaw whether harm is a distinct element of an Eighth Amendment denial-of-medical-care claim, because courts often discuss harm (or the prospect of harm) in assessing whether the plaintiff showed a serious medical need.[16] Assuming that the

---

where "[o]ther delays were caused by the pharmacy that provided the eye drops").

[13] *Id.*; *compare Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) (rejecting "the plaintiffs' argument that charging inmates for medical care is per se unconstitutional").

[14] *Lanzaro*, 834 F.2d at 347 (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)).

[15] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

[16] For example, the court in *Brooks v. Kyler*, 204 F.3d 102 (3d Cir. 2000) rejected a medical-needs claim based on the following reasoning:

Although a deliberate failure to provide medical treatment motivated by non-medical factors can present a constitutional claim, . . . in this case, it is uncontroverted that a nurse passing out medications looked at Brooks's injuries within minutes of the alleged beating, and that Brooks was treated by prison medical staff on the same day.   Moreover, he presented no

plaintiff must prove some harm, proof of physical injury clearly suffices.  Proof of physical pain should also suffice, even absent other significant physical injury.  *Cf. Atkinson*, 316 F.3d at 266 ("Needless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment.").  It is less clear whether emotional distress resulting from an increased risk of *future* physical injury gives rise to a damages claim for denial of medical care.

Addressing a claim for injunctive relief, the Supreme Court has held that "the Eighth Amendment protects against future harm to inmates."  *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  In *Helling*, the Court held that the plaintiff validly stated a claim "by alleging that petitioners have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." *Id.* at 35.  The Third Circuit, however, has held that "the *Helling* Court's reasoning concerning injunctive relief does not translate to a claim for monetary relief." *Fontroy v. Owens*, 150 F.3d 239, 243 (3d Cir. 1998).  *Fontroy* addressed whether an inmate "can recover damages ... for emotional distress allegedly caused by his exposure to asbestos, even though he presently manifests no physical injury." *Id.* at 240.  Reasoning that "[i]n a conditions of confinement case, 'extreme deprivations are required to make out a . . . claim[,]' " *id.* at 244 (quoting *Hudson*, 503 U.S. at 9), the Third Circuit held that "[f]ederal law does not provide inmates, who suffer no present physical injury, a cause of action for damages for emotional distress allegedly caused by exposure to asbestos," *id.* More recently, however, a different Third Circuit panel seemed to depart from *Fontroy* in a case involving an inmate's claim regarding a risk of future injury from environmental tobacco smoke (ETS).  In *Atkinson v. Taylor*, 316 F.3d 257, 259-60, 262 (3d Cir. 2003), the plaintiff alleged both current physical symptoms and a risk of future harm from exposure to ETS.  The *Atkinson* court distinguished the plaintiff's claim concerning future harm from the claim concerning present physical injury, and analyzed each separately.  *See id.* at 262.  The panel majority held that the defendants were not entitled to qualified immunity on the plaintiff's future injury claim.  *See id.* at 264.  In a footnote, the panel majority stated:

> If appellee can produce evidence of future harm, he may be able to recover monetary damages.  *See Fontroy*, 150 F.3d at 244.  However, the problematic quantification of those future damages is not relevant to the

evidence of any harm resulting from a delay in medical treatment.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.").

*Id.* at 105 n.4; *see also Lanzaro*, 834 F.2d at 347 ("The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment.").

1       present inquiry concerning whether the underlying constitutional right was
2       clearly established so that a reasonable prison official would know that he
3       subjected appellee to the risk of future harm.   Moreover, even if appellee
4       is unable to establish a right to compensatory damages, he may be entitled
5       to nominal damages.

6

7    *Id.* at 265 n.6.  While the cited passage from *Fontroy* held that damages are not available
8    for such future injury claims, the *Atkinson* majority seemed to suggest that such damages
9    are available (though they may be difficult to quantify), and that in any event nominal
10   damages might be available.[17]

11       The Supreme Court's more recent decision in *Erickson v. Pardus*, 127 S. Ct. 2197
12   (2007) (per curiam), may provide additional support for the notion that some damages
13   claims for future harm are cognizable.  In *Erickson*, the plaintiff sued for damages and
14   injunctive relief after prison officials terminated his treatment program for a liver condition
15   resulting from hepatitis C.  The court of appeals affirmed the dismissal of the complaint,
16   reasoning that the complaint failed to allege a "cognizable ... harm" resulting from the
17   termination of the treatment program.  *Erickson*, 127 S. Ct. at 2199.  The Supreme Court
18   vacated and remanded, holding that the plaintiff sufficiently alleged harm by asserting that
19   the interruption of his treatment program threatened his life.  *See id.* at 2200.[18]

20

21       42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a
22   prisoner confined in a jail, prison, or other correctional facility, for mental or emotional
23   injury suffered while in custody without a prior showing of physical injury."   For
24   discussion of this limitation, see the Comments to Instructions 4.8.1 and 4.10.  To the extent
25   that Section 1997e(e) requires some physical injury (other than physical pain) in order to

---

[17] *Atkinson* accords with a pre-*Helling* case, *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990), in which one of the plaintiffs alleged that a prison doctor's "sadistic and deliberate indifference to his serious medical needs . . . caused him needless anxiety . . . and intentionally and needlessly put him at a substantially increased risk of peptic ulcer," *id.* at 108.  Though the plaintiff had not alleged that his physical condition actually worsened as a result of the doctor's conduct, the court held that he had stated an Eighth Amendment claim.  In so ruling, the court stated that it was "not prepared to hold that inflicting mental anxiety alone cannot constitute cruel and unusual punishment."  *Id.* at 111.  The plaintiffs in *White* sought both injunctive and monetary relief, and the court did not resolve whether the plaintiff who suffered mental anxiety and increased risk of future harm (but no present physical injury) could obtain damages.  *See id.* at 111 ("What damages, if any, flow from the alleged conduct is an issue for later proceedings.").

[18] The Court explained: "The complaint stated that Dr. Bloor's decision to remove petitioner from his prescribed hepatitis C medication was 'endangering [his] life.'... It alleged this medication was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment.... This alone was enough to satisfy Rule 8(a)(2)."  *Id.*

1   permit recovery of damages for mental or emotional injury, the jury instructions on
2   damages should reflect this requirement.  However, not all Eighth Amendment denial-of-
3   medical-care claims fall within the scope of Section 1997e(e).  "[T]he applicability of the
4   personal injury requirement of 42 U.S.C. § 1997e(e) turns on the plaintiff's status as a
5   prisoner, not at the time of the incident, but when the lawsuit is filed."  *Abdul-Akbar v.*
6   *McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc).

1    **4.11.2        Section 1983 – Conditions of Confinement –**
2                          **Convicted Prisoner –**
3                   **Failure to Protect from Suicidal Action**
4

**Model**

Because inmates must rely on prison authorities to treat their serious medical needs, the government has an obligation to provide necessary medical care to them.  If an inmate is particularly vulnerable to suicide, that is a serious medical need.  In this case, [plaintiff] claims that [decedent] was particularly vulnerable to suicide and that [defendant] violated the Eighth Amendment to the United States Constitution by showing deliberate indifference to that vulnerability.

In order to establish [his/her] claim for violation of the Eighth Amendment, [plaintiff] must prove the following three things by a preponderance of the evidence:

First:  [Decedent] was particularly vulnerable to suicide.  [Plaintiff] must show that there was a strong likelihood that [decedent] would attempt suicide.

Second: [Defendant] was deliberately indifferent to that vulnerability.

Third:  [Decedent] [would have survived] [would have suffered less harm] if [defendant] had not been deliberately indifferent.

I will now give you more details on the second of these three elements.  To show that [defendant] was deliberately indifferent, [plaintiff] must show that [defendant] knew that there was a strong likelihood that [decedent] would attempt suicide, and that [defendant] disregarded that risk by failing to take reasonable measures to address it.

[Plaintiff] must show that [defendant] actually knew of the risk. [19]    [If a prison official knew of facts that [he/she] strongly suspected to be true, and those facts indicated a substantial risk of serious harm to an inmate, the official cannot escape liability merely because [he/she] refused to take the opportunity to confirm those facts.  But keep in mind that mere carelessness or negligence is not enough to make an official liable.  It is not enough for [plaintiff] to show that a reasonable person would have known, or that [defendant] should have known, of the risk to [plaintiff]. [Plaintiff] must show that [defendant] actually knew of the risk.]

---

[19] This Instruction is based on *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), which rejected "an objective test for deliberate indifference" under the Eighth Amendment and held that such a claim requires that "the official knows of and disregards an excessive risk." Readers should be aware that in *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017), however, the court of appeals stated that the district court "erroneously applied a subjective test," by examining what the officials were actually aware of as opposed to what they should have been aware of and that "our case law is clear: It is not necessary for the custodian to have a subjective appreciation of the detainee's particular vulnerability." *Id*. at 231. See discussion in Comment.

In light of *Palakovic*, in appropriate cases, this sentence of the Instruction might be altered to state, "[Plaintiff] must show that [defendant] knew or should have known of the risk," and the last two sentences of this paragraph of the Instruction omitted.

If [plaintiff] proves that the risk of a suicide attempt by [decedent] was obvious, you are entitled to infer from the obviousness of the risk that [defendant] knew of the risk. [However, [defendant] claims that even if there was an obvious risk, [he/she] was unaware of that risk.  If you find that [defendant] was unaware of the risk, then you must find that [he/she] was not deliberately indifferent.][20]

**Comment**

A Section 1983 claim arising from a prisoner's suicide (or attempted suicide) falls within the general category of claims concerning denial of medical care.  *See, e.g.*, *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) ("A particular vulnerability to suicide represents a serious medical need.").  For an overview of the Eighth Amendment standard for denial of adequate medical care, see Comment 4.11.1, *supra*.  A specific instruction is provided here for suicide cases because the Court of Appeals has articulated a distinct framework for analyzing such claims.

Vulnerability to suicide.   The plaintiff must show that the decedent "had a 'particular vulnerability to suicide.' "  *Woloszyn*, 396 F.3d at 319 (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).  "[T]here must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Woloszyn*, 396 F.3d at 320 (quoting *Colburn*, 946 F.2d at 1024). This requirement does not "demand a heightened showing at the pleading stage . . . that the plaintiff's suicide was temporally imminent or somehow clinically inevitable." *Palakovic v. Wetzel*, 854 F.3d 209, 230 (3d Cir. 2017) (noting that the detainee's "suicidal propensities were so readily apparent that his fellow inmates nicknamed him 'Suicide.' ").

Deliberate indifference.  Prior to the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994), the court of appeals had articulated an objective test for prison suicide cases:  "[A] plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991). *Colburn* involved a pre-trial detainee, whose claim was governed by the Due Process Clause rather than the Eighth Amendment, but the court of appeals drew on Eighth Amendment jurisprudence to fashion this test. It explained that the "should have known" requirement is a "phrase of art with a meaning distinct from its usual meaning in the context of the law of torts. . . . It connotes something more than a negligent failure to appreciate the risk of suicide presented by the particular detainee, though something less than subjective appreciation of that risk." *Id.* at 1025. The court of appeals applied the *Colburn* standard in an Eighth Amendment case. *Young v. Quinlan*, 960 F.2d 351, 360 (3d Cir. 1992).

In *Farmer*, the Supreme Court granted certiorari "because Courts of Appeals had

---

[20] It is unclear who has the burden of proof with respect to a defendant's claim of lack of awareness of an obvious risk.  *See* Comment 4.11.1.

adopted inconsistent tests for 'deliberate indifference,' " and pointed to a decision from the Seventh Circuit requiring a "subjective standard" and the *Young* case from the Third Circuit adopting the "knows or should have known" standard. 511 U.S. at 832. In resolving this conflict, *Farmer* expressly held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; . . . . an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." 511 U.S. at 837-38. It explained that a "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," but cautioned: "When instructing juries in deliberate indifference cases with such issues of proof, courts should be careful to ensure that the requirement of subjective culpability is not lost. It is not enough to find that a reasonable person would have known, or that the defendant should have known, and juries should be instructed accordingly." 511 U.S. at 842-43 & n.8.

The court of appeals applied *Farmer's* requirement of actual knowledge in a subsequent Eighth Amendment prison suicide case. *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n.2 (3d Cir. 2001); *see also* Comments 4.11.1 & 4.11.3. The model instruction is designed for use in Eighth Amendment cases and it employs the *Farmer* standard.

In *Woloszyn v. County of Lawrence*, 396 F.3d 314 (3d Cir. 2005), the court of appeals confronted a suicide case involving a pretrial detainee. Claims regarding pretrial detainees are substantive due process claims, and it is not clear whether such claims should be analyzed under *Farmer*'s stringent Eighth Amendment test. *See* Comment 4.11.1 (noting that the substantive due process test for claims concerning treatment of pretrial detainees may be less rigorous than the Eighth Amendment test for claims concerning treatment of convicted prisoners); *see also Owens v. City of Philadelphia*, 6 F. Supp. 2d 373, 380 n.6 (E.D. Pa. 1998) ("The Eighth Amendment's cruel and unusual punishments clause – which  underpins the subjective 'criminal recklessness' standard articulated in *Farmer* – seems rather remote from the values appropriate for determining the due process rights of those who, although in detention, have not been convicted of any crime."). The court of appeals in *Woloszyn* observed that *Farmer* did not "directly control" the analysis because *Farmer* involved the Eighth Amendment and a pre-trial detainee's claim arises under the Due Process Clause. It nevertheless suggested that " 'deliberate indifference' may be equivalent to the 'should have known' element required" by *Colburn*, but did "not attempt to reconcile those two phrases . . . because there is no evidence . . . that Woloszyn had a particular vulnerability to suicide," and therefore the first element of the claim could not be established. *Woloszyn*, 396 F.3d at 321.

In *Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017), an Eighth Amendment case involving the suicide of a sentenced prisoner, the court of appeals cited this passage from *Woloszyn* and stated that the Eighth Amendment  "deliberate indifference" standard is "probably" equivalent to the "should have known" standard for pretrial detainees. It declared that the Due Process and Eight Amendment claims are "essentially equivalent,"

and that "whether a pre-trial detainee or a convicted prisoner," a plaintiff needs to show:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017) (footnote omitted).

It found it unnecessary to determine whether there is any difference between deliberate indifference and reckless indifference, because something beyond mere negligence is required under both formulations. 854 F.3d at 224 n.15.

But *Palakovic* was clear that the district court "erroneously applied a subjective test," by examining what the officials were actually aware of as opposed to what they should have been aware of. Citing *Colburn* and *Woloszyn*—both pre-trial detainee cases— it held that "our case law is clear: It is not necessary for the custodian to have a subjective appreciation of the detainee's particular vulnerability." *Id*. at 231. It did not explain how this standard is consistent with *Farmer*, perhaps because the defendants took the position that *Colburn* governed. *See* Brief for Correction Officers, 2016 WL 5846656, at *23 (quoting *Colburn* as "set[ting] forth a clear standard for establishing liability in prison suicide cases"); Brief for Dr. Rathore, Dr. Eidsvoog, and MHM, Inc., 2016 WL 5845936, at *14 & n.5 (relying on *Colburn* and noting that while it was a pre-trial detainee case, it "still applies to a convicted prisoner whose Eighth Amendment protections have attached"). *See also Mullin v. Balicki*, 875 F.3d 140, 149, 158-59 (3d Cir. 2017) (describing *Palakovic* as "clarify[ying] our vulnerability-to-suicide precedent," and explaining that a "vulnerability-to-suicide claim, which is simply a more specific articulation of the Eighth Amendment rule that prison officials must not be deliberately indifferent to a prisoner's serious medical needs, requires showing (1) the existence of a particular vulnerability to suicide, (2) that a prison official knew or should have known of the individual's particularly vulnerability, and (3) that the official acted with reckless or deliberate indifference to the particular vulnerability."); *Kedra v. Schroeter*, 876 F.3d 424, 440 (3d Cir. 2017) (describing *Palakovic* as holding that the deliberate indifference standard in the prison suicide context is objective and that "the relevant inquiry for both substantive due process claims and Eighth Amendment claims [is] whether the prison official knew or should have known of the individual's particular vulnerability.")

In light of the apparent tension between the decision in *Farmer* and the decisions in *Palakovic*, *Mullin*, and *Kedra*, the committee has decided to retain the Instruction's actual knowledge requirement, and to offer an alternative in the relevant footnote to the Instruction.

Under the *Farmer* deliberate indifference standard, even "officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Causation.  Although the standard stated in *Woloszyn* does not explicitly include an element of causation, district court opinions have applied a causation test.  *See, e.g.*, *Foster v. City of Philadelphia*, 2004 WL 225041, at *7 (E.D. Pa. 2004) ("[B]ecause Massey's failure to act consistent with Police Department Directives on High-Risk Suicide Detainees (requiring communication of suicidal tendencies to the supervisor and all other police officials coming into contact with the detainee) could be found to be found to be a factor contributing to Foster's suicide attempt, Plaintiff has made the requisite causal nexus."); *id.* at *8 ("Because a reasonable jury could find that Foster's suicide attempt could have been prevented had Moore monitored Foster more closely, Plaintiff has made the requisite causal nexus."); *Owens*, 6 F. Supp. 2d at 382-83 ("Because the omissions complained of could be found to have been among the factors resulting in the non-deliverance of the pass [to see a psychiatrist] at a time contemporaneous to the last sighting of Gaudreau alive, plaintiffs have made a showing of the requisite causal nexus.").  Including the element of causation seems appropriate; as the Court of Appeals stated regarding claims of failure to protect from attack, "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

Liability of supervisory officials. A prison administrator can be held liable for his own deliberate indifference to the risk of suicide even if he has no specific knowledge of any particular inmate, because a "high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population." *Barkes v. First Correctional Medical*, 766 F.3d 307, 324 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042, 2043 (2015). There was evidence in *Barkes* that "serious deficiencies in the provision of medical care by a private, third-party provided resulted in an inmate's suicide," *id.* at 310, that prison officials "were aware of an unreasonable risk that [the contractor's] declining performance would result in a failure to treat or a mistreatment of an inmate's serious medical condition," and that by failing to enforce compliance with the standards required by their contract, the prison officials "were deliberately indifferent to the risk that [the contractor's] flagging quality would result in a violation of an inmate's constitutional rights." *Id.* at 331. *See also* Comment 4.6.1 (discussing supervisory liability). When the Supreme Court reversed on the issue of qualified immunity, it did not reach the merits of the constitutional claim itself. *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015). It did, however, express some skepticism, noting that "the weight of authority at the time of Barkes's death suggested that such a right did not exist." *Id.* at 2044-45 (citing cases from the Fourth, Fifth, Sixth, and Eleventh Circuits).

Regarding Plaintiffs' arguments about alleged deliberate indifference, their allegations

are not supported in fact or in law.  The Eighth Amendment protects inmates convicted of crimes

from the infliction of "cruel and unusual punishments."  The Supreme Court's cases "have held

that a prison official violates the Eighth Amendment only when two requirements are met."

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be,

objectively, 'sufficiently serious.'"  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Accordingly, "a prison official's act or omission must result in the denial of 'the minimal civilized

measure of life's necessities."  *Id.*  (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  A

plaintiff alleging a failure to prevent harm "must show that he is incarcerated under conditions

posing a substantial risk of serious harm."  *Id.*

Second, "'only the unnecessary and wanton infliction of pain implicates the Eighth

Amendment.'"  *Id.*  (quoting *Wilson*, 501 U.S. at 297).  Therefore, for there to be an Eighth

Amendment violation, "a prison official must have a sufficiently culpable state of mind."  *Id.*

(quoting *Wilson*, 501 U.S. at 297).  And, as the Supreme Court explained, "[i]n prison-conditions

cases that state of mind is one of deliberate indifference' to inmate health or safety."  *Id.*  (quoting

*Wilson*, 501 U.S. at 302-03).  That is, the inmate must show that the prison official "knows of and

disregards an excessive risk to inmate health or safety."  *Id.* at 837.

Likewise, for pretrial detainees, the Fifth Amendment prohibits deliberate indifference to

health or safety.  *Harvey v. Chertoff*, 263 F. App'x 188, 191 (3d Cir. 2008).  The Third Circuit

"previously . . . found it constitutionally adequate to analyze pretrial detainees' claims of

inadequate medical care under the familiar deliberate indifference standard."  *Id.* (citing *Natale v.*

*Camden County Correctional Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)).  Under the Fifth

Amendment, as under the Eighth Amendment, "prison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they responded

reasonably to the risk, even if the harm ultimately was not averted."  *Id.* (quoting *Farmer*, 511

U.S. at 844).

Plaintiffs' allegations of deliberate indifference conflict with the reality, which is that Defendants here have shown great concern with Plaintiffs' health and Defendants have taken many significant actions to mitigate risks to inmates' health and safety.  Accordingly, because the Jail has not shown deliberate indifference and has taken appropriate actions to try to protect the Plaintiffs' health, Plaintiffs here cannot establish a constitutional violation.

> **b.  Regarding COVID-19 specifically, Plaintiffs do not establish that Defendants were deliberately indifferent to inmates' health and safety.**

In *Hope v. Warden York County Prison*, No. 20-1784 (3d Cir. 2020), we find on-point guidance for how this Court should view the COVID-19 pandemic issues as they relate to prison management; *Hope* is recent authority, and it is binding precedent for this Court.

In *Hope*, the petitioner-detainees claimed that their conditions of confinement surrounding the COVID-19 pandemic coupled with their age and unique healthcare needs (that subjected them to increased risk if they contracted COVID-19) in the prison setting violated the 5th, 8th, and 14th Amendments and due process protections as pretrial detainees.  The District Court granted petitioners' TRO based on COVID-19 concerns.  But the Court of Appeals reviewed the District Court's orders under the standard of review for preliminary injunctions, vacated the District Court's orders, and found that the District Court erred in a number of procedural and substantive ways.

At the outset, the Court of Appeals noted that "[p]etitioners bore a particularly heavy burden" because the district court granted a mandatory injunction and a heightened standard should have applied.  The District Court erred, in part, because it shifted the burden to the Government, but "the burdens at the preliminary injunction stage track the burdens at trial", *see also* Fed. R. Civ Pr. 65(b)(3).  *Id*. at 14.  The District Court also erred, in part, because it failed to

order bond and under Rule 65(c), the absence of bond precludes issuance of an injunction. Moreover, the Court of Appeals chastised the District Court for not having a hearing to properly consider the Government's opposition.

*Hope* found that the "District Court abused its discretion when it held that Petitioners showed a substantial likelihood of success on the merits of their claims." *Id*. at 17. *Hope* noted at 24 that "important here—and largely ignored by the District Court and Petitioners—are the legitimate objectives and difficulties of managing a detention facility, *Hubbard II*, 538 F.3d at 233, and the objectives of immigration detention: ensuring appearance at detention proceedings and protecting the public from harm. *See DiBuono*, 713 F.2d at 993; 8 U.S.C. Section 1226(c)."

*Hope* further noted at 24, citing *Bell v. Wolfish*: "in determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.' 441 U.S. at 540 n.23."

*Hope* further noted at 25, that "we defer to administrators on matters of correctional facility administration 'not merely because the administrator ordinarily will…have a better grasp of his domain than the reviewing judge, but also because operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government not the Judicial.' *Bell*, 441 U.S. at 520."

Moreover, the Court of Appeals found error with the District Court's findings of facts regarding COVID-19 since those were based on a different case and it did not meaningfully

consider the pertinent evidence on conditions provided by the Government, including reliance on CDC guidelines, their health services corp., social distancing efforts, providing masks and required their wearing when detainees left their cohort housing units, ramped up sanitation protocols, temperature checks, etc. at the facility.

At 28-29, *Hope* explained that "[a]ll of these efforts [by the facility] were material to the District Court's assessment of the conditions challenged as punishment, yet it addressed none of them…the [District] Court ignored legitimate government objectives and did not assess the conditions [at the facility]"

*Hope* held "[c]onsidering all the responsive measures specifically implemented to detect and to prevent spread of the virus, the challenges of facility administration during an unprecedented situation, and the purposes served by detention—Petitioners did not show a substantial likelihood of success on their claim that the conditions of their confinement constitute unconstitutional punishment. We therefore hold the District Court erred as to its punishment determinations." *Id.* at 30.

As guidance for how this Court should view the facts here, *Hope* observed that "in essence they [Plaintiff/Petitioner/Detainees] argue that the Government must eliminate entirely their risk of contracting COVID-19.  That task is not the constitutional standard, however. Although the District Court criticized the Government for the lack of 'effective containment measure' and for not doing 'nearly enough' to combat COVID-19, those critiques are not tantamount to establishing the Government's deliberate indifference." *Id.* at 32.

Further, as additional guidance on how this Court should view the facts here, *Hope* observed the CDC guidance specific to detention facilities is important to bear in mind, not the general CDC guidelines because the guidelines specific to detention facilities "recogniz[e]

challenges inherent in the detention setting, CDC guidance suggests placing detainees into cohorts where social distancing is not practical…and that not all strategies will be feasible in all facilities." *Id.* at 33.

    *Hope* held that "Petitioners fell well short of establishing that the Government was deliberately indifferent toward their medical needs.  Considering the record as a whole, we have a definite and firm conviction that a mistake has been committed.  Petitioners did not show a likelihood of success, much less a strong likelihood of success, that their substantive due process rights were violated by either punishment or deliberate indifference to their serious medical needs." *Id.* at 33-34.

    *Hope* also noted, at 34, "[i]n addition to the errors regarding Petitioners' likelihood of success on the merits, the District Court erred in evaluating irreparable harm to Petitioners in the absence of relief, balancing the harms to each side, considering the public interest, and fashioning and 'all-or-nothing' remedy."

    *Hope* observed "after finding Petitioners are 'all at heightened risk for severe complications from COVID-19, the District Court found they faced irreparable harm 'should they contract' the virus. This circular reasoning does not support relief because it applies regardless whether Petitioners are detained or released." *Id*. at 34.

    *Hope* offered further guidance that, "the [District] Court should have considered several factors for each individual (beyond just their ages and medical conditions) because 'the personal nature of constitutional rights' is a 'cardinal principle of our constitutional order'. Yet a fundamental problem pervades the District Court's analysis: it treated Petitioners as a unit instead of as individuals with their own unique medical histories, medical risks, healthcare access needs, detention conditions, and release circumstances. It should have assessed all of

these factors for each Petitioner to determine whether they would suffer more harm in detention than if release." *Id*. at 34-35.

In pointing out further error, "the [district] Court thereby improperly eliminated the public interest from the required showing for preliminary injunctive relief." *Id*. at 36.

The Court of Appeals concluded that "we acknowledge difficulties faced by trial courts in emergent matters and the need to act immediately, particularly during a pandemic. But exigent circumstances do not empower a court to jettison fundamental principles of due process or rules of procedure that govern such matters. For the reasons we have explained, the District Court committed procedural and substantive errors that require us to vacate the…orders and remand the case for further proceedings consistent with this opinion." *Id*. at 40.

For an additional recent case in this jurisdiction involving COVID-19 issues in the prison setting, Defendants will now discuss *Wragg v. Ortiz* 1:20-cv-05496 (D.N.J.).  In *Wragg*, the class action was brought on behalf of all people confined at Federal Correctional Institution Fort Dix in New Jersey who are vulnerable to COVID-19 because of their age or underlying health conditions.  Petitioners sued the Federal Bureau of Prisons and the warden at the Federal Correctional Institution at Fort Dix, under the federal habeas statute 28 U.S.C. § 2241, claiming that their custody violated the Eighth Amendment to the U.S. Constitution. Petitioners also filed suit under 28 U.S.C. § 1331, claiming that they were subject to unconstitutional conditions of confinement in violation of the Section 504 Rehabilitation Act, 29 U.S.C. § 794, which requires Fort Dix to reasonably accommodate people with disabilities.

The *Wragg* petitioners alleged that the almost 3,000 people held at FCI-Fort Dix resided in units of up to 300 people, and that the warden had warned that "social distancing [was] not possible in this environment."  As of May 1, 2020, the BOP had reported 40 positive prisoner

cases at Fort Dix, although petitioners estimated that the number of actual cases was significantly higher.  The four named petitioners were all medically vulnerable due to underlying health conditions.

The *Wragg* Court denied the motion for preliminary injunction and dismissed the case on May 27, 2020.  The plaintiffs subsequently requested reconsideration on June 2, which the court denied on June 10. 2020 WL 3074026 The court noted that they "afforded Petitioners an opportunity to put forward more facts to back up their conclusory, and to a degree contradictory, accusations, but they have not done so." They agreed with the defendant that the plaintiffs were attempting a "discovery fishing expedition."  The case appears to be closed with no further relevant docket entries.

Further, Defendants have made COVID-19 vaccines available to inmates.  These are not the actions of an administration that "disregarded risk," or acted with "deliberate indifference."

Again, Plaintiffs' allegations of deliberate indifference conflict with the reality, which is that Defendants here have shown great concern with Plaintiffs' health and Defendants have taken many significant actions to mitigate COVID-19 risks.  Accordingly, because the Jail has not shown deliberate indifference and has taken appropriate actions to try to protect the Plaintiffs' health, Plaintiffs here cannot establish a constitutional violation.

### III.    Standard of Review

Preliminary injunctive relief, is a form of a temporary restraining order or a preliminary injunction is an "extraordinary remedy" and "should be granted only in limited circumstances." *KOS Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).[21]

---

[21] The standard of review for the other orders such as placing a monitor in jail would also fall

The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp*., 847 F.2d 100, 102 (3d Cir. 1988). The seeking party must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief. *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv*., 724 F.3d 377, 382 (3d Cir. 2013). While all four factors must favor the preliminary relief the first two factors are required for a motion to prevail. *Lenin v. Borough of Tenafly,* 515 F. App'x 114, 117 (3d Cir. 2013); *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) ("the first two factors are prerequisites for a movant to prevail").

As applied to prisons "[s]weeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts," and this "is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiffs' likelihood of success on the merits have been made." *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); see also, *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("[J]judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Defendants' filing in Document 49 sets out at length an application of these facts to the law, so, for brevity, Defendants incorporate those same legal and factual arguments herein as to why Plaintiffs: (1) are unlikely to succeed on the merits; (2) will not suffer irreparable harm by denial of the preliminary injunction; (3) are better protected from COVID-19 in the Jail than the general public, and, therefore, cannot claim the threat of COVID-19 outweighs the harm to Defendants; and

---

under the standards of preliminary injunctive relief.

(4) have not shown that immediate preliminary injunctive relief favors the public interest.

## IV.     Conclusion

Because Plaintiffs cannot muster evidence of any wrongdoing on the part of Defendants, and based on binding caselaw, as discussed above, that cuts directly against Plaintiffs' Motion, the extraordinary remedy of injunctive relief sought by Plaintiffs in this matter must fail.

Respectfully submitted,

Zeff Law Firm, LLC
/s/ Gregg L. Zeff_____

**CERTIFICATE OF SERVICE**

I certify that on April 19, 2021, a copy of this Prehearing Brief was served via ECF on

Plaintiffs' Counsel of record.

Zeff Law Firm, LLC
/s/

Gregg L. Zeff