William J. Hughes, Jr., Esq. (NJ 3031993)
PORZIO BROMBERG & NEWMAN, P.C.
100 Southgate Parkway
Morristown, NJ  07962
(973) 889-4308
wjhughes@pbnlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RAYMOND LAMAR BROWN, JOHN CLARK, DESMOND ROGERS, TODD FORD, JR., AND CARLOS SOLER, individually and on behalf of others similarly situated, | : : : : | Hon. Noel L. Hillman |
| Plaintiffs | : | |
| v. | : | Case No. 1:20-cv-7907-NLH-KMW |
| CHARLES, WARREN, in his Official capacity as Warden, Cumberland County Dep't. of Corrections and CUMBERLAND COUNTY NEW JERSEY, Defendants. | : : : : : | **SECOND PARTIAL INITIAL REPORT AND RECOMMENDATION OF THE SPECIAL MASTER (URGENT ACTION REQUIRED)** |

The Court appointed me as Master in these proceedings, and the procedural history of, and authority for, my appointment under Fed. R. Civ. P. 53 is outlined in the June 15, 2021 Partial Initial Report and Recommendation of the Special Master (ECF No. 146).  On July 2, 2021, the Court granted an extension of time to file the Initial Report and Recommendation, until August 19, 2021 (ECF No. 152). During the course of researching and writing this document, information came to my attention which, given the circumstances, requires immediate action.  In short, it appears that the Cumberland County Jail ("CCJ") is,

6505653

and has been, using Simple Green Original All Purpose Cleaning Solution ("Simple Green") as a cleaning agent to protect against COVID-19 when, in fact, Simple Green is not intended to be used to disinfect against COVID-19 and therefore cannot protect CCJ, its inmates or employees against the virus.  The ineffectiveness of Simple Green occurs in the context of whether each of the areas at CCJ have actually received adequate cleaning supplies on a daily basis.  Because these issues involve the immediate health, safety and welfare of all individuals who work and reside in the Cumberland County Jail ("CCJ"), I am submitting this Second Initial Report and Recommendation.

**A.**   **Background**

    1.   The Testimony

Throughout the testimony of the preliminary injunction hearing, it was apparent that CCJ relied upon two principal cleaning agents to disinfect the facility: Simple Green and NABC.  Tr. 682:19-25 (April 22, 2021).  Simple Green is a green cleaning liquid, and NABC, short for "Non-Acidic Bathroom Cleaner," is a blue liquid.

Although CCJ does have bleach, it has phased out the use of bleach by the inmates to rely upon other products to disinfect, such as Simple Green.  Tr. 721:10-16 (April 22, 2021).  Sergeant Ortiz testified that he supplies the officers with Simple Green and that there is also a 15 gallon drum of prepared NADC blue

2

solution in the "sanitation station" by the intake area that is available at all times to refill spray bottles.  Tr. 711:24 – 712:4, 713:23-714:2 (April 22, 2021).  Plaintiff Clark testified that there is "some green cleaner" that is made available to clean the floors and the residential areas.  Tr. 404:5-15 (April 21, 2021).  Officer Paulaitis, on the other hand, testified that the spray bottles contain "the blue stuff."  Tr. 1776:11-14 (May 3, 2021).  Upon questioning by the Court, however, Officer Polaitis stated that "a lot of times" the spray bottles would be filled with Simple Green and that many times inmates would hoard spray bottles filled with Simple Green.  Tr. 1805:11-17, 1804:4-12 (May 3, 2021).  The question of whether the spray bottles contain Simple Green or NABC is of critical importance, and our inspections have revealed both are used.

This ties into the issue of how inmates and cell areas receive their cleaning supplies.  There was a significant amount of testimony that Sergeant Ortiz is one individual who is responsible for the dispensing of all cleaning supplies.  Tr. 681:15-18, 697:24-698:6, 701:13-20 (April 22, 2021).  The supplies are stored in a closet, and corrections officers must go to Sgt. Ortiz to obtain masks, clean mops, refills of hand-sanitizer and other cleaning supplies.  Tr. 693:3-5, 697:24-698:6, 711:19-712:6 (April 22, 2021).  In addition to the cleaning supplies closet to which Sgt. Ortiz and his assigned

3

corrections officer, Officer Politais, have sole access, Tr. 713:3-8 (April 22, 2021), there is the aforementioned "Sanitation Station" which has a 15 gallon jug of NABC blue cleaning solution.  Tr. 712:9-19 (April 22, 2021).  Corrections officers can access the "Sanitation Station" at all times.  *Id.*

Sgt. Ortiz and Officer Paulaitis, who assists Sgt. Ortiz, work the day-shift during the week and have the weekends off. Tr. 685:14-16 (April 22, 2021); 1790:21-1791:1 (May 3, 2021). Both Sgt. Ortiz and Officer Paulaitis stated that when they are not available, all of the cleaning supplies can be refilled at the "Sanitation Station" located by the intake area.  Tr. 1775:13-22 (May 3, 2021).  It is apparent from the testimony (and from the inspections), however, that the only thing present in the "Sanitation Station" is the 15 gallon jug of NABC blue cleaning solution.  The other supplies are under lock and key to which Corrections Officers do not have access when Sgt. Ortiz is not working or otherwise unavailable.  Tr. 720:3-5 (April 22, 2021).

Additionally, there was a significant amount of testimony that inmates were required to create their own cleaning rags, which were made from old towels, to clean their cells.  Tr. 1813:3-1816:19 (May 3, 2021). Rags are laundered twice a week. Tr. 1814:9-20 (May 3, 2021).

6505653

2.   <u>June 3, 2021 Announced Inspection</u>

Our announced inspection on June 3, 2021 revealed that CCJ had several types of cleaners at the facility.  In Delta Pod (where COVID-19 quarantined inmates are housed), for example, we found one half-empty spray bottle with a blue liquid (presumably NADC) and a half empty bottle of NADC:




There were several empty bleach bottles in the cleaning storage area of D Pod.  In C Pod, however, the only cleaners available were bottles of Simple Green, which some inmates said were filled within the hour prior to the inspection team's arrival:[1]



---

[1] Two inmates independently stated that Sgt. Ortiz brought filled bottles of Simple Green to the C Pod immediately prior to the inspection.  The C Pod Log Book indicates that the Warden, Sgt. Ortiz and a civilian entered into C Pod about an hour prior to the inspection team's arrival at C Pod.

5

6505653

We did not observe any spray bottles or jugs of NABC blue cleaning solution.  We did, however, observe a new and un-opened box of masks and that inmates had the makeshift rags fashioned after old towels:

 

During our discussions with the inmates in the C Pod, they indicated that, when available, they primarily use Simple Green to clean all surfaces, including the floors and the bathroom.

We found that Simple Green was also contained in the spray bottles of the men's dormitory area.  This area is of particular concern because there are six large bunkroom-cells stacked over three floors (two per floor), with each cell containing as many as 22 inmates.  There is no social distancing, and few – if any – inmates wore masks. As such, the conditions in the Men's dormitory are ripe for disease transmission.  In our discussions with inmates in the men's dormitory, they also indicated that they routinely use the "green spray bottle" to clean all surfaces.

6505653

By contrast, we found that the women's dormitory area had the NADC blue liquid in its spray bottles:



Interestingly, we found that the women's dormitory area was clean, well-stocked with proper cleaning supplies and rags, and the corrections officer indicated that there was a daily cleaning schedule that she enforced.  When asked whether she had sufficient cleaning supplies, the corrections officer indicated that she took the time on her breaks to ensure that the women's dormitory was fully stocked by seeking the supplies herself.

During the inspection, we examined the "Sanitation Station," which contained only a 15 gallon jug filled with a blue liquid, presumably NABC, but there were no other cleaning supplies in the closet:



6505653

In the storage area maintained by Sgt. Ortiz, we found that CCJ had a significant amount of bleach and other supplies, yet only the medical area had partially full bottles of bleach (and no other area):

 

Also in the storage area, we found a 55 gallon drum of Simple Green Solution, but we also found several bottles of a different type of Simple Green product, Simple Green D Pro 5:

 

The presence of these two products in Sgt. Ortiz's storage area is consistent with the purchase records supplied by CCJ in response to my May 21, 2021 information requests to the parties. Among the voluminous documents produced by CCJ were purchase

6505653

records for both Simple Green Original Cleaning Solution and
Simple Green D Pro 5:

| | | | | | |
|---|---|---|---|---|---|
| ✱ 03/09/21 | PO 21-01436  1 Paid Ck280353 | Vn UL003   ULINE INC | S-9983 SIMPLE GREEN ORIGINAL | En 02/19/21 | 2,276.00-   17,069.23 |
| ✱ 04/27/21 | PO 21-02459  1 Paid Ck281295 | Vn UL003   ULINE INC | S1-15857 D PRO 5 DISINFECTANT | En 04/08/21 | 240.00-   23,060.48 |

*CCJ Document Production*, at DRTSM-001295, DRTSM-001301.
According to the website of supplier Uline, Inc., the amounts
paid correspond exactly to the purchase of ***four 55 gallon drums***
of Simple Green Original Cleaning Solution and ***ten 1 gallon jugs***
of Simple Green D Pro 5.[2]  During the first inspection, we did
not observe any of the gallon jugs of Simple Green D Pro 5 in
CCJ, nor did we observe any spray bottles containing a clear
liquid.[3]

    3. <u>July 8, 2021 Unannounced Inspection</u>

    I returned to CCJ on July 8, 2021 along with the
specialists from Porzio Compliance Services and Ready Health,
LLC on an unannounced inspection.  The officers and supervisors
were extremely cooperative and assisted us throughout our
inspection.  I should note that we observed that both masks and
hand sanitizer were available throughout the facility.

---

[2]   *See*, https://www.uline.com/Product/Detail/S-9983/All-Purpose-
Cleaners/Simple-Green-Original-55-Gallon-Drum;
https://www.uline.com/Product/Detail/S-15857/All-Purpose-Cleaners/Simple-
Green-d-Pro-5-Disinfectant-1-Gallon-Bottle.
[3] Our research has indicated that Simple Green D Pro 5 is a clear liquid and
not green, as is the Simple Green Original Cleaning Solution.  *See*,
https://www.youtube.com/watch?v=ZYA30MiKQn8.

6505653

Upon entering C Pod, we observed one empty spray bottle, two nearly empty spray bottles of Simple Green Original solution, and one empty jug of NADC blue solution:

 

We were informed at the outset of our inspection that CCJ had purchased cleaning rags for the inmates to replace discarded ripped-up towels.  We observed inmates with these rags in C Pod.

In Delta Pod, the quarantine pod, we did not find any cleaning solutions at all.  The empty NABC and bleach bottles remained in the cleaning closet from our first visit; there was an empty spray bottle behind the corrections officer's station; and, there was a very dirty pail of mop-water on the side:



10

In the men's dormitory, we again observed that no inmate was wearing a mask, even though they were available at the corrections officer's desk.  The only cleaning solution we observed were bottles of Simple Green Original Cleaning Solution in spray bottles in the various cell areas:



Almost all of the spray bottles were full, and we did observe a few of the replacement rags in the men's dormitory.

When we spoke with the inmates of C Pod and the men's dormitory, they advised that they rarely receive cleaning supplies, and when they do, it is Simple Green and no other types of cleaning solutions.  This is somewhat contradicted by the full bottles of Simple Green in the men's dormitory and the nearly empty bottles of Simple Green and empty bottle of NABC we observed in C Pod.  But our inspection occurred at 10:00 a.m. on a Thursday, and we did not observe any cleaning solutions in the men's areas other than Simple Green, and in C Pod, the spray bottles were nearly empty at the beginning of the day.

Again, by contrast, the women's dormitory was fully stocked with full bottles of NADC and bleach, spray bottles that contained a clear liquid of (presumably) either Simple Green Pro D 5 or bleach, and a full bag of new clean rags:





When we asked the corrections officer in charge of the women's dormitory why her area was so well stocked, she said that she made sure that the cleaning closet was fully stocked at the beginning of her shift.  This corrections officer was different than the corrections officer with whom we spoke during the prior inspection, yet her answer was nearly identical.

6505653

4.   <u>Simple Green Original Cleaning Solution is Not
Effective Against COVID-19 or Bacterial Agents</u>

During our research for the Initial Report and
Recommendation, we discovered that Simple Green Original
Cleaning Solution is not effective against COVID-19, bacterial
or viral agents.  Although Sunshine Makers, Inc., the
manufacturer of Simple Green, markets its product as an "All
Purpose Cleaner," it does not readily disclose that this
particular product is not intended to be used as a disinfectant.
To find this information, one has to view the "Frequently Asked
Questions," which states:

> **Q: Can Simple Green All-Purpose Cleaner be used
> against Coronavirus Disease 2019 (COVID-19)?**
>
> Coronavirus Disease (COVID-19) is the disease caused
> by the virus SARS-CoV-2.
>
> **Simple Green All-Purpose Cleaner is not a disinfectant
> and will not kill bacteria or viruses. Simple Green
> All-Purpose Cleaner can not treat a disease.** Simple
> Green All-Purpose Cleaner can be used to clean a
> surface before applying a disinfecting solution.

https://simplegreen.com/news-and-media/coronavirus-faq/

(Emphasis added).

By contrast, Simple Green D Pro 5 is intended to be used as
a disinfectant, and it is marketed to be effective against the
virus that causes COVID-19:

> Simple Green d Pro 5 has demonstrated effectiveness
> against viruses similar to SARS-CoV-2 on hard, non-
> porous surfaces. Therefore, Simple Green d Pro 5 can
> be used against SARS-CoV-2 when used in accordance

6505653

with the directions for use against Norovirus on hard,
non-porous surfaces. Refer to the CDC website at
www.cdc.gov & coronavirus for additional information.

https://simplegreen.com/industrial/products/d-pro-5/.  Moreover,

its promotional video specifically states that it can be used in

correctional institutions, as well as other types of industrial

settings.  *Id.*

**B.**    **Analysis**

   1.    Exigent Circumstances Necessitate a Second Partial
         Initial Recommendation and Report

The Delta variant of the SARS-CoV-2, the virus that causes

COVID-19, is becoming more widespread throughout the United

States and the world.  As of July 31, 2021, this strain accounts

for about 92% of all the new cases in the United States and the

statistical region of New Jersey, New York, Puerto Rico and

Virgin Islands according to the CDC.[4]  With the advent of the

readily-available vaccines along with the precipitous decline in

new cases, the common thought was that the COVID-19 pandemic was

behind us.  Unfortunately, the Delta variant is a game changer.

According to the CDC's July 30, 2021 Weekly Morbidity and

Mortality Report, the vaccines do not fully protect against

infection by the Delta variant.[5]  A study of a COVID-19 outbreak

---

[4] https://covid.cdc.gov/covid-data-
tracker/?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-
ncov%2Fcases-updates%2Fvariant-proportions.html#variant-proportions.

[5] https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w.

14

6505653

in Barnstable County, Massachusetts, of 469 new cases revealed
that three-quarters of these cases involved fully vaccinated
individuals. *Id.*  Although the symptoms in the fully vaccinated
individuals were less severe, it is apparent that the Delta
variant is more highly transmissible, affects a younger
population, and results in more severe symptoms in unvaccinated
individuals.  *Id.*  The CDC estimates that about 69% of the
population in Barnstable County were vaccinated, *id.*, but the
vaccination rate in Cumberland County, NJ, is about 35% of the
total population and about 45% of adults over the age of 18.[6]

Our interviews of inmates and research at CCJ reveals that
the vaccination rate among the inmate population is alarmingly
low.  Inadequate access to easily understandable information and
education about vaccines plays a part, but the unfortunate death
of an inmate after having received a vaccine (who had other
health conditions and co-morbidities) has also been a large
disincentive to the inmate population.  Additionally, CCJ has
made no effort to determine the number of corrections officers
and staff who have been fully vaccinated.  These issues will be
addressed in the full Initial Report and Recommendation.

Regardless of the reason why the vaccination rate at CCJ
remains low, however, the fact remains that Delta variant now

---

[6] https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w.

6505653

poses an immediate threat to CCJ, as cases in the United States
and New Jersey among vaccinated and un-vaccinated individuals
begin to rise at an alarming pace.[7]  When the Delta variant takes
hold in CCJ – and it appears that it is only a matter of time –
CCJ will be faced with many of the same health, safety and
quarantine issues that challenged it at the height of the
pandemic.

Accordingly, the time to act is now, particularly when we
observed issues which require immediate attention.  In the first
Partial Initial Report and Recommendation, I recommended that
the CCJ develop a written policy specifically to address COVID-
19 along with limited recommendations to address immediate
concerns to prevent the housing of COVID-19 positive and COVID-
19 negative inmates in the same cells.  My intention was for the
CCJ to organically amend this written policy when the full
Initial Report and Recommendation was issued.  Given the
exigency of the circumstances, however, I must recommend
additional immediate measures to protect health, safety and
welfare of the inmates, corrections officers and staff of the
CCJ.

---

[7] https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases.

6505653

    2.   <u>The Use of Simple Green Original Cleaning Solution as</u>
        <u>a Disinfecting Agent Must be Immediately Discontinued</u>

Based upon the foregoing research revealing the intended uses of Simple Green Original Cleaning Solution along with our observations of its widespread and common use at CCJ, it is imperative that CCJ cease using it as a cleaning agent to prevent COVID-19 in all areas of the facility.

Although it may be understandable that one may rely upon Simple Green's marketing materials which state it is an all-purpose cleaner to believe that it is effective against COVID-19, it does not explain why CCJ bought ten one-gallon bottles of Simple Green D Pro 5 in addition to the 220 gallons of concentrated Simple Green Original Cleaning Solution.  If the limitation of the intended uses of Simple Green Original was determined after the purchase of the four 55 gallon drums, it does not explain why Simple Green Original continues to be used as one of CCJ's primary cleaning agents to protect against COVID-19.

Although the circumstances and knowledge of CCJ in purchasing this cleaning solution will be left to another day, this much is clear: ***CCJ must immediately cease using Simple Green Original Cleaning Solution as an agent to protect the CCJ facilities against COVID-19***.  It can be used to clean dirt, grease and stains in accordance with its intended uses, but it

6505653

cannot be provided to inmates to "disinfect" their living quarters because it is not, and has never been, a disinfectant. CCJ must immediately identify and implement a suitable substitute disinfecting agent throughout all areas of the facility. Whether Simple Green Original is replaced with NABC, Simple Green D Pro 5 (both of which are apparently effective against COVID-19), or some other cleaning solution, CCJ should decide which is effective and economical.  But CCJ must immediately identify and implement a demonstrably effective substitute.

3.    CCJ Must Include in the Written COVID-19 Policy a
      System for the Distribution of Cleaning Supplies and
      Monitoring of Supply Levels.

Throughout the testimony, it is evident that there is no clear system of accountability to ensure that there are adequate cleaning supplies in the inmate areas.  Our observations during the inspections confirm this fact.  Although it appears that there are sufficient cleaning supplies at the CCJ (with the exception of Simple Green), the system relies upon the individual corrections officers to affirmatively go to Sgt. Ortiz to request supplies when their respective areas are low. Sgt. Ortiz claims he has never refused any request or had any problem, and several corrections officers have stated that they have been unable to obtain adequate supplies from Sgt. Ortiz. Several inmates with whom we spoke stated that they were told by

18

the corrections officers in their areas that the requests for additional cleaning supplies were refused.

The fact that we observed severely limited supplies in the men's areas during our unannounced inspection appears to lend some credence to the line corrections officers' accounts, while the existence of plentiful supplies in the women's dormitory tends to favor the CCJ's account that cleaning supplies are readily available.[8]  The truth may lie somewhere in the middle, but for the purposes of this recommendation, the truth is irrelevant because there is currently no clear accountability for ensuring that adequate cleaning supplies are readily available to the inmates at all times.  Whether to request additional supplies is left to the discretion of the individual line corrections officers, and the supplies they are provided will only last a limited amount of time because there is no secure space in the men's areas to store cleaning supplies.

Further, it is undisputed that, except for the 15 gallon jug of NABC blue solution, all of the cleaning supplies remain under lock and key, with Sgt. Ortiz having sole access.  After

---

[8] These conflicting accounts occur under the backdrop of extreme tensions between the CCJ administration, the local Policemen's Benevolent Association (the union representing the line corrections officers), and the local Fraternal Order of Police (the union representing the supervising corrections officers).  The Cumberland County Commission, f/k/a the Cumberland County Board of Chosen Freeholders, have stated their intention to close CCJ. There has been considerable and understandable resistance to the closing by the PBA and the public defenders who represent the inmates, and New Jersey State litigation has resulted in a preliminary injunction preventing the closure which may, or may not, be dissolved by New Jersey's Appellate Division.

6505653

2:00 p.m. on weekdays, and all weekends, corrections officers at CCJ do not have access to the cleaning supplies that are located in Sgt. Ortiz's area.

It is important to note that the cleaning closet in the women's dormitory is located outside of the secure cell area. The female inmates do not have ready access to the closet, and thus the corrections officer in charge can better control the distribution of the cleaning supplies than in the men's cell areas, where there is no locker to store cleaning supplies. This must be changed immediately.

It is my recommendation that each of the men's areas be provided with a locker that can be secured by a key that is held by the corrections officer in charge of the area.  At the beginning of *each day*, a supervising corrections officer shall ensure that a set amount of cleaning supplies are present in each locker.  The supervising officer shall create a log of all supplies provided/refilled in each area on a daily basis.  These supplies must, at a minimum, include:

- Masks;

- Hand-Sanitizer;

- Gloves;

- Surface Spray Disinfectant;

6505653

- Cleaning solution/disinfectant for floors and bathing areas;

- Anti-bacterial soap; and

- Clean rags.

In addition, the supervising officer must ensure that there are clean mop-heads in each of the men's areas.  Dirty mop heads and rags must be laundered three-times per week, and it is the supervising officer's responsibility that this is done and is adequately logged.

The corrections officers in charge of each inmate area shall be responsible for the distribution of cleaning supplies to the inmates for the cleaning of their individual cells and common areas.  Surface spray disinfectant shall be provided to each inmate to clean their areas for a limited amount of time. That is, if an inmate requests surface spray disinfectant, he or she should possess the spray bottle for no longer than it takes to spray and wipe his or her immediate area (about 5 minutes). The corrections officer in charge of an area is responsible for ensuring that supplies are not wasted, hoarded, or otherwise misused by inmates.

Finally, it is important that the CCJ have access to the stored cleaning supplies at all times, even when Sgt. Ortiz is unavailable.  Understanding that theft and accountability is a concern, the Watch Commander of each shift shall have a key to

21

the cleaning supplies storage closet and shall be responsible for obtaining additional cleaning supplies should they be required when Sgt. Ortiz is unavailable.  The Watch Commander shall log his or her entry into the storage closet and the item(s) taken from the storage closet.

## C.   <u>Recommendations</u>

Based upon the foregoing, it is my recommendation that:

- Cumberland County Jail must ***immediately*** cease from using Simple Green Original Cleaning Solution as a cleaning agent to protect against SARS-CoV-2.

- Cumberland County Jail must identify and implement a disinfectant surface cleaner, effective against SARS-CoV-2, within ***48 hours***.

- Within fourteen (14) days, Cumberland County Jail must provide secure lockers in each of the areas holding inmates that do not have secure closets to store cleaning supplies.

- Within fourteen (14) days, the Cumberland County Jail shall include in its written COVID-19 policy and implement:

  - A supervising corrections officer shall ensure ***daily*** that the secure storage lockers in each area are fully stocked with a set amount of cleaning supplies and personal protective equipment, which at a minimum must include:

    - Masks;
    - Hand-Sanitizer;
    - Gloves;
    - Surface Spray Disinfectant;
    - Cleaning solution/disinfectant for floors and bathing areas;
    - Anti-bacterial soap; and
    - Clean rags.

6505653

o The supervising officer shall ensure that there are clean mop-heads.

o The supervising officer shall log each item placed/replaced/refilled in each locker **daily**.

o Dirty mop-heads and rags shall be cleaned at least **three times per week**.

o The corrections officer in charge of an area shall be responsible for dispensing cleaning supplies and personal protective equipment to the inmates.

o The corrections officer in charge of an area shall permit an inmate to use disinfectant surface spray for his or her cell for only so long as is required to spray and wipe his or her area (about 5 minutes).

o The corrections officer in charge of an area shall be responsible for ensuring that supplies are not wasted, hoarded, or otherwise misused by inmates.

o The Watch Commander of each shift shall have a key to the storage closet containing the cleaning supplies and shall be responsible for obtaining additional cleaning supplies if Sgt. Ortiz (or other supervising officer responsible for the cleaning closet) is unavailable.  The Watch Commander shall log his or her entry into the closet and the items(s) taken.


Respectfully submitted,


WILLIAM J. HUGHES, JR., ESQ.
Porzio, Bromberg and Newman, P.C.
Appointed Master of the Court

Dated: August 4, 2021

23

6505653