UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAYMOND LAMAR BROWN, JOHN CLARK, DESMOND RODGERS, TODD FORD, JR. AND CARLOS SOLER, individually and on behalf of others similarly situated,

    Plaintiffs,

v.

EUGENE CALDWELL, et al.,

    Defendants.

No. 1:20-cv-07907-NLH-AMD

OPINION

**APPEARANCES**:

KAREN A. CONFOY
JEFFREY MORROW POLLOCK
PAUL W. KALISH
FOX ROTHSCHILD LLP, PC
997 LENOX DRIVE
BLDG 3
LAWRENCEVILLE, NJ 08648

    *On behalf of Plaintiffs*

SUSANA CRUZ HODGE
JOSEPH J. DEPALMA
LITE DEPALMA GREENBERG & AFANADOR, LLC
570 BROAD STREET
SUITE 1201
NEWARK, NJ 07102

    *On behalf of Defendants*

MICHAEL LOUIS TESTA, SR.
TESTA HECK SCROCCA & TESTA, PA
424 LANDIS AVENUE
PO BOX 749
VINELAND, NJ 08360

    *On behalf of Loren Joynes*

```
JOHN-PAUL MADDEN
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, NJ 08033-0389

     On behalf of Charles Warren

WILLIAM J. HUGHES, JR.
PORZIO, BROMBERG & NEWMAN, P.C.
100 SOUTHGATE PARKWAY
P.O. BOX 1997
MORRISTOWN, NJ 07962-1997

     Special Master
```

**HILLMAN**, District Judge

Before the Court are Captain Loren Joynes'[1] and former Warden Charles' Warren's[2] applications for the Court to bar production of certain physical electronic devices based on the Fifth Amendment privilege against self-incrimination. (ECF 245, 255). The Court will grant in part and deny in part Joynes' application and will grant Warren's application in its entirety.

---

[1] Captain Loren Joynes is a non-party employee of the Defendant, Cumberland County Jail. Joynes has previously appeared as a witness in this matter, most notably testifying regarding his oversight of jail operations on May 11, 2021, the day of the shakedown. (ECF 141).

[2] Charles Warren previously served as the warden for the County Defendant and was sued in his official capacity. Warren resigned from his position on September 20, 2021. (See ECF 205). Warren is now a non-party witness in this matter.

**BACKGROUND**

The Court presumes the parties' and third-party witnesses' knowledge of the factual background of the case and only recounts the facts salient to the dispute before it. On May 25, 2021, the Court ordered the Cumberland County Jail to produce all electronic communications that were exchanged in the days surrounding a shakedown at the jail. The shakedown occurred contemporaneously with the Court's endorsement of a consent order entered into by the parties addressing prospectively the Jail's Covid-19 policy. (ECF 142 at 494:8-15.)

Pursuant to that Order, Defendants retained a forensic expert, Jeff Brenner, who collected the devices of various jail employees in order to prepare a report on what they contained as it pertained to Plaintiffs' allegations the shakedown was in retaliation for this suit and the resulting consent order. As relevant to the instant dispute before the Court, Joynes produced his work desktop, work phone and personal phone and Warren produced his work desktop and work phone for imaging.

During a hearing for this matter held on October 1, 2021, the Court noted that it appeared that one of the corrections officers in the jail who testified was not being truthful with the Court and that documents may have been backdated or destroyed. (ECF 225 at 15-24). The Court reminded the parties of its power to hold individuals before it in criminal contempt

and that it viewed the testimony it heard as being potential perjury. (Id.). Following that discussion on the record, on October 22, 2022 and October 26, 2022, the Court separately ordered the parties to conduct further imaging and review of devices used by the jail officials including Joynes' personal computer and Warden Warren's personal cell phone, which had not previously been produced. (ECF 240, 242).

Joynes and Warren then filed letters on the record objecting to the production or further imaging of any of their devices pursuant to the Fifth Amendment. (ECF 245, 255). Thereafter, the parties engaged in letter briefing regarding the timeliness and applicability of the assertion of the Fifth Amendment Privilege. (ECF 287, 289, 290). The Court considers the assertion of the Fifth Amendment Privilege against self-incrimination by Joynes and Warren against that factual background.

## **DISCUSSION**

I. <u>Subject Matter Jurisdiction</u>

This Court exercises subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331.

II. <u>Standard and Analysis</u>

The self-incrimination clause of the Fifth Amendment reads: "No person ... shall be compelled in any criminal case to be a witness against himself." <u>Doe v. U.S.</u>, 487 U.S. 201, 207, 108

4

S.Ct. 2341, 2346, 101 L.Ed.2d 184 (1988). "As the Court has often held, the Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" Baxter v. Palmigiano, 425 U.S. 308, 316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

The Supreme Court has noted that when a party objects to testifying or producing discovery based on their privilege against self-incrimination, that objection must be made in a timely manner. Minnesota v. Murphy, 465 U.S. 420, 429, 104 S. Ct. 1136, 1143, 79 L. Ed. 2d 409 (1984) ("Thus it is that a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself."); see also United States v. Frierson, 945 F.2d 650, 660 (3d Cir. 1991) ("It is well established, however, that the Fifth Amendment privilege against self-incrimination is not self-executing and thus must be claimed when self-incrimination is threatened. *Minnesota v. Murphy,* 465 U.S. at 429, 104 S.Ct. at 1143. This rule means that a person cannot ordinarily complain on Fifth Amendment privilege grounds

5

to the use of information supplied by him or her unless the privilege was asserted at the time the information was given."); Brock v. Gerace, 110 F.R.D. 58, 62 (D.N.J. 1986) ("Such an objection, like any claim of privilege, must be set forth in a timely manner."); United States v. Alvarez, 519 F.2d 1036, 1045 (3d Cir. 1975) (holding that where doctor was retained to evaluate defendant's state of mind and the evaluation was shared with the government, the defendant could not object to a subpoena by the government to have the doctor testify).

    The Court holds that Joynes has waived his privilege against self-incrimination with respect to his personal cell phone. Joynes contends that he did in fact assert the privilege at the time that he turned his phone over to Brenner. However, a review of the record reveals that he indicated to Brenner that he was concerned about the privacy of his personal information, not his right against self-incrimination. (ECF 289 at 10-11). This privacy concern is not equivalent to the assertion of the Fifth Amendment Privilege against self-incrimination. Fisher v. United States, 425 U.S. 391, 399, 96 S. Ct. 1569, 1575, 48 L. Ed. 2d 39 (1976) ("[T]he Court has never suggested that every invasion of privacy violates the privilege. Within the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests; but the Court has never on any ground, personal

privacy included, applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which, in the Court's view, did not involve compelled testimonial self-incrimination of some sort."). Thus, the Court finds that Joynes waived his Fifth Amendment Privilege against self-incrimination with respect to his personal phone when he produced it without objection to the Defendants' forensic expert for examination and analysis.[3]

It also appears that the Court need not be concerned that the act of production of the phone itself is testimonial such that ordering Joynes to turn over his personal phone for imaging would violate his privilege against self-incrimination. First, it appears that Joynes' phone has already been given over to Brenner and imaged and searched for information surrounding the May 2021 shakedown event. Second, to the extent that the transfer of the phone's data to the Plaintiffs or any further imaging of the phone would constitute an act of production, the Court holds that such production would not be testimonial. Indeed, the Supreme Court in Fisher held that where the existence of evidence is a "foregone conclusion," producing such

---

[3] See Shakman v. Democratic Org. of Cook Cty., 920 F. Supp. 2d 881, 892-94 (N.D. Ill. 2013)(county employee who answered questions in the context of an ongoing civil investigation of the county waived her right to later assert her Fifth Amendment Privilege against self-incrimination).

evidence does not violate the Fifth Amendment because the production is not "sufficiently testimonial for purposes of the privilege." Fisher, 425 U.S. at 411.  Because the parties already know that Captain Joynes has a personal cell phone and that it contains information pertinent to the operation of the jail around the time of the shakedown event,[4] admitting that he has it and turning it over "adds little or nothing to the sum total of the [] information" available to the government in any prosecution.  Id.; cf. United States v. Hubbell, 530 U.S. 27, 45, 120 S. Ct. 2037, 2048, 147 L. Ed. 2d 24 (2000) (noting that where the government seeking production did not already know about the existence and whereabouts of certain documents, Fisher's foregone conclusion rationale would not apply).  Thus, Joynes' arguments regarding the act of production also fails.

Joynes also argues that he has not waived his Fifth Amendment Privilege with respect to his personal computer.  (ECF 287).  The Court agrees with Joynes in that respect.  The personal computer was never produced and was not clearly ordered to be produced until October 26, 2022.  On October 27, 2022, counsel for Joynes filed a letter on the docket asserting the privilege.  The Court finds this assertion of the privilege

---

[4] The report by Brenner touched on the contents of Joynes' personal cell phone and noted the existence of text messages related to work on his phone.  (See ECF 235 at 1).

timely and thus does not find the privilege waived with respect to Captain Joynes' personal computer. Brock, 110 F.R.D. at 62. Further, because the parties do not know if there is any pertinent information at all on the personal computer, any act of production by Joynes of that personal computer could be testimonial such that it would fall within the ambit of the Fifth Amendment privilege against self-incrimination. Hubbell, 530 U.S. 27 at 45.

Warren separately argues that he should not be compelled to turn over his personal cell phone for imaging because he timely asserted his privilege against self-incrimination. The Court agrees. Warren argues that the Court cannot find that there was any waiver on his part because he never turned over his personal cell phone and timely asserted his privilege against self-incrimination as soon as the issue arose. Indeed, after the Court clearly ordered production of that device on October 26, 2022, Warren wrote to the Court through counsel on November 2, 2022 to assert the privilege and advise the Court that he would not be producing his phone. This assertion of the privilege prior to production is timely and the Court will not find a waiver. Maness v. Meyers, 419 U.S. 449, 463, 95 S. Ct. 584, 593, 42 L. Ed. 2d 574 (1975) (noting that it is a "familiar procedure" to decline to produce documents while a court decides if those documents are covered by the Fifth Amendment

9

Privilege). The Court also does not perceive sufficient indications in the record at this juncture to suggest that the existence of relevant evidence on Warren's personal phone is a foregone conclusion such that ordering him to produce it would not be testimonial.[5]  Hubbell, 530 U.S. at 45. That said, should the existence and location of relevant documents or communications on Warren's personal cell phone become obvious by virtue of reviewing other discovery in this case, production by Warren may no longer be testimonial. Based on the current record before the Court, though, it would be inappropriate to order Warren to turn over his device for imaging at this time.

## CONCLUSION

For the reasons expressed above, the Court holds that the

---

[5] To be sure, the report submitted by Brenner revealed text messages that appear to be from Warren's personal phone to Joynes, potentially in violation of this Court's sequestration order. (See ECF 225, 235). The Court notes that some date back to the time of the shakedown in May 2021 and discuss the incident. The fact that there are text messages regarding the shakedown does not automatically imply that Warren's personal phone contains messages regarding retaliation or intent to cover up a retaliation. The current record only shows Warren using his personal phone to discuss the shakedown in his capacity as the warden responsible for the jail. The Court, while concerned, is not prepared to hold that the existence of evidence showing retaliation by Warren is a foregone conclusion. Hubbell, 530 U.S. at 45 (declining to view the existence of certain documents as a foregone conclusion where the "Government [had] not shown that it had any prior knowledge of either the existence or the whereabouts of the 13,120 pages of documents ultimately produced by respondent").

Fifth Amendment Privilege against self-incrimination protects Joynes' personal computer and Warren's personal phone from production.  However, the Court holds that Joynes' has waived the privilege with respect to his personal cell phone.

An appropriate Order will be entered.

Date: July 14, 2022       s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.