UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAYMOND LAMAR BROWN, JOHN
CLARK, DESMOND ROGERS, TODD
FORD, JR. and CARLOS SOLER,
individually, and on behalf of
others similarly situated,

     Plaintiffs,

    v.

EUGENE CALDWELL, in his
official capacity as Warden,
Cumberland County Department of
Corrections, and CUMBERLAND
COUNTY, NEW JERSEY, et al.,

     Defendants.

No. 20-cv-7907 (NLH) (AMD)

OPINION

APPEARANCES:

KAREN A. CONFOY, ESQ.
PAUL W. KALISH, ESQ.
JEFFREY M. POLLOCK, ESQ.
FOX ROTHSCHILD LLP
PRINCETON PIKE CORPORATE CENTER
997 LENOX DRIVE
LAWRENCEVILLE, NJ 08648

    *Counsel for Plaintiffs*

VICTOR A. AFANADOR
JOSEPH J. DEPALMA
SUSANA CRUZ HODGE
ANTHONY DAVID ZATKOS, JR
LITE DEPALMA GREENBERG & AFANADOR, LLC
570 BROAD STREET
SUITE 1201
NEWARK, NJ 07102

    *Counsel for County Defendants*

```
JOHN-PAUL MADDEN, ESQ.
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, NJ 08033-0389
```

     *Counsel for Charles Warren and Eugene Caldwell*

```
MARY LOU GARTY
THE GARTY LAW FIRM, LLC
712 EAST MAIN STREET
SUITE 2A
MOORESTOWN, NJ 08057
```

     *Counsel for Shane Zanes*

```
MICHAEL L. TESTA, ESQ.
TESTA HECK TESTA & WHITE, PA
424 LANDIS AVENUE
VINELAND, NJ 08360
```

     *Counsel for Loren Joynes*

```
WILLIAM J. HUGHES, JR., ESQ.
PORZIO, BROMBERG & NEWMAN, P.C.
100 SOUTHGATE PARKWAY
P.O. BOX 1997
MORRISTOWN, NJ 07962-1997
```

     *Special Master*

**HILLMAN**, District Judge

     Before the Court is Defendant Zanes' Motion to Dismiss Plaintiff's Supplement to the First Amended Complaint (the "Supplement"). (ECF 373). For the reasons expressed below, the Motion to Dismiss will be denied.

     **I.    BACKGROUND**

     As this matter has a long and procedurally complex history, of which the parties are well aware, the Court will limit its

present discussion of the history to the information necessary to resolve the pending motion.

After filing the First Amended Complaint, Plaintiffs filed a motion for preliminary injunction addressing Cumberland County Jail's (the "Jail") failures in COVID-19 testing, protection, and quarantine and isolation procedures.  (ECF 44).  The Court conducted an evidentiary hearing on April 20, 21, 22, 26, 27, 29, 30, May 3 and 4, 2021, at which time it heard testimony and took evidence by and on behalf of Plaintiffs and Defendants.  On May 6, 2021, the parties agreed to the appointment of a Special Master under Federal Rule of Civil Procedure 53 to make findings and to report and make recommendations to the Court concerning the conditions at the Jail regarding COVID-19.  (ECF 126).  The Court subsequently, on May 17, 2021, appointed William J. Hughes, Jr., to serve in that capacity and to oversee the implementation of a consent order entered on May 13, 2021 implementing an agreed set of interim COVID-19 protocols.  (ECF 126, 131).

On March 3, 2022, the Court filed an Opinion and Order permitting Plaintiffs to file a supplement to the First Amended Complaint.  (ECF 330, 331).  In the Supplement, Plaintiffs allege that, Captain Loren Joynes, Sergeant Shane Zanes, and Sergeant Roberto Ortiz, with the knowledge of then Jail Warden Charles Warren (collectively the "Officer Defendants") "planned

and carried out a full 'shakedown' in C-Pod" as retaliation on
May 11, 2021, within a few days of the Parties' agreement to the
Court's appointment of a special master and to the entry of the
consent order which imposed new jail policies binding on the
jail's management and corrections officers.  (Supplement, ECF
332 ("Supp.") at ¶ 26).

Plaintiffs further allege that corrections officers at the
Jail "tossed" the cells in C-Pod and seized "every additional
item the inmates in C-Pod had in their cells, including items
that Plaintiffs had purchased themselves from the Jail
commissary, as well as cleaning rags, masks and soap."  (Id. at
¶ 27).  Plaintiffs had in their cells "extra supplies, including
rags, cleaning solution, blankets, towels and cot mattresses"
that had been kept "with the knowledge, assent, and express or
implied permission of correctional officers staffing the unit."
(Id. at ¶ 25).

Defendants Joynes and Zanes allegedly took photographs
during the shakedown, and Defendant Joynes sent some pictures of
C-Pod and the seized items to Defendant Warren via text message.
(Id. at 28).  Plaintiffs allege Defendants Joynes and Warren
used their personal cell phones for this communication instead
of phones officially issued by Cumberland County.  (Id. at ¶ 30)

On May 13, 2021, Plaintiffs wrote to the Court and
requested a conference on the matter.  (Id. at ¶ 35).  The Court

4

issued a text order scheduling a conference for May 14, 2021. (Id. at ¶ 36).  Plaintiffs allege that after outside County Counsel requested documentation about the shakedown from Defendant Warren, Defendant Joynes texted Defendant Zanes: "'Type up a report from the C Pod shakedown and put it under my door.  The courts want to see our reports.  They complained and said w [sic] left them without sheets'."  (Id. at ¶ 39).  In a later exchange, Defendant Zanes asked Defendant Joynes "'What time did we start,'" to which Defendant Joynes responded "'🤷'".[1]  (Id.).  Plaintiffs allege that Defendant Zanes backdated his report to May 12, 2021, and incorrectly indicated that the shakedown occurred on May 12, 2021.  (Id.).

Plaintiffs further allege that Defendant Joynes "change[d the] date on Defendant Zanes report to May 11 and incident date to May 11.  Defendant Joynes print[ed], but [did] not save, the edited report."  (Id. at ¶ 40).  According to the Supplement, Defendant Ortiz "'created'" a report on May 14, 2021 at 8:11 a.m., which was then sent to Defendant Joynes from a scanner with a Cumberland County domain.  (Id.)  Defendant Joynes then

---

[1] "The 'person shrugging emoji' can designate ignorance, indifference, self-acceptance, passive-aggression, annoyance, giving up, or not knowing what to make of something.  It could also be a visual form of the one-word response of indifference, 'whatever.'"  <u>Person Shrugging Emoji</u>, Dictionary.com, https://www.dictionary.com/e/emoji/person-shrugging-emoji (last visited June 12, 2023).

sent Defendant Warren an email "containing Defendant Joynes incident report, Defendant Ortiz incident report, Defendant Zanes incident report (with May 11 dates), Martinez and Velez reports, three photos."  (Id.).

The Court conducted evidentiary hearings on May 19 and 20, 2021.  The Court issued an Order at the beginning of the hearing "directing that all witnesses in this proceeding be sequestered until such time as their testimony is complete."  (ECF 140 at 7:5-7 ("Sequestration Order")).  Defendant Joynes appeared as a witness and represented through separate counsel that he understood the Sequestration Order.  (Id. at 11:9-11).  Plaintiffs allege that "[w]ithin an hour of the commencement of the hearing, Defendants Warren and Joynes began text messaging on their personal cellphones about the Plaintiffs' testimony, the testimony of Defendant Ortiz and other witnesses who were involved in the shakedown, the evidence, the Plaintiffs' attorney's areas of questioning, and rulings by the [Court]." (Supp. at ¶ 44).

Following the filing of the Supplement on March 3, 2022, all of the Defendants but Defendant Zanes filed answers to the Supplement.  (ECF 346, 354, 356, 357).  On May 11, 2022, Defendant Zanes filed a motion to dismiss the Supplement.  (ECF 373).  Plaintiffs filed a brief in opposition on June 7, 2022,

(ECF 380), and Defendant Zanes filed a reply brief in further support of his motion on June 14, 2022 (ECF 383).

After additional hearings, Plaintiffs filed formal motions to hold the Officer Defendants in civil contempt, to the extent each was personally involved, for violation of the Sequestration Order, the backdating and use of the internal memoranda concerning the shakedown, and acts of perjury pertaining to both incidents of alleged civil contempt. (ECF 491, 492, 493, 524). These motions and supporting materials repeat the allegations in the Supplement.  The Officer Defendants have denied the allegations in the motions and the Supplement. (ECF 513, 514, 515, 517).

The Court conducted hearings on those motions on May 31 and June 1, 2023 which will be continued on a future date to be set. The Court reviews Defendant Zanes' motion against this factual and procedural backdrop.

## II.  STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim."

8

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**III. DISCUSSION**

Defendant Zanes now moves to dismiss both counts against him: Unlawful Retaliation in Violation of Plaintiffs' First Amendment Rights pursuant to 42 U.S.C. § 1983 and Unlawful Conspiracy to Intimidate Plaintiffs from Participating and Testifying in this Action pursuant to 42 U.S.C. § 1985.  (ECF 373-1 at 6).

### A. Retaliation in Violation of First Amendment, 42 U.S.C. § 1983

To state a claim of retaliation in connection with a plaintiff's exercise of his First Amendment rights the plaintiff must show that "(1) he engaged in constitutionally protected conduct; (2) he suffered adverse action; and (3) the constitutionally protected conduct was 'a substantial or motivating factor' for the adverse response."  Mincy v. Chmielsewski, 508 F. App'x 99, 103 (3d Cir. 2013).  When there are individual defendants involved, the plaintiff must show that each defendant was personally involved in the retaliation.  Evancho, 423 F.3d at 353 ("An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.") (internal alterations omitted)

(quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)).

If all three elements of the claim are met, the burden shifts to the Defendants to show by a preponderance of the evidence that they would have taken the same adverse action "even in the absence of the protected activity." <u>Rauser v Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001)).

### i. Personal Involvement

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." <u>Rode</u>, 845 F.2d at 1207.  A question as to a defendant's personal involvement may arise in the context of a supervisor, as "liability cannot be predicated solely on the operation of *respondeat superior.*" <u>Id.</u>  Because of this limitation, courts have explained that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Id.</u> However, personal involvement can also be sufficiently plead by alleging a defendant's direct participation in the allegedly retaliatory action.  <u>See, e.g.,</u> <u>Brown v. Mount Laurel Twp.</u>, No. 13-6455, 2016 WL 5334657, at *8 (D.N.J. Sept. 21, 2016) ("Personal involvement here is sufficiently plead through the allegations that each officer contributed to the situation.").

Zanes argues that Plaintiffs have not established his personal involvement in the retaliation.  (ECF 373-1 at 14-15).

11

He states that the complaint does not include any allegation showing that he "directly 'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violation.'"  (Id. at 15 (citation omitted)).  This is inaccurate.

Here, Plaintiffs do not allege that Defendant Zanes' involvement is premised on his role as a supervisor, rather his alleged involvement was direct.  The Supplement alleges Zanes' participation in the planning: "Defendant Warren, and Correctional Officer Defendants Joynes, Zanes and Ortiz conspired and coordinated the C-Pod shakedown in retaliation against Plaintiffs for their active participation in this lawsuit, including for their work as class representatives, and the success Plaintiffs achieved."  (Supp. at ¶ 54).

Moreover, it explicitly alleges his involvement in engaging in the "shakedown": "Correctional Officer Defendants Joynes, Zanes and Ortiz carried out the C-Pod shakedown in retaliation against Plaintiffs for their active participation in this lawsuit, including for their work as class representatives, and the success Plaintiffs achieved."  (Id. at ¶ 55).  While this allegation may include conclusory language, the portion stating that Zanes carried out the shakedown, along with his collogues, is a factual allegation.  See Fowler v. UPMC Shadyside, 578 F.3d

12

at 210-11 ("First, the factual and legal elements of a claim
should be separated.  The District Court must accept all of the
complaint's well-pleaded facts as true, but may disregard any
legal conclusions.").

The Supplement provides further detail of Zanes'
involvement, explaining that "[d]uring the shakedown, Defendants
Joynes and Zanes each took numerous color photographs of the
cells and the items taken from the cells."  (Supp. at ¶ 28).
Zanes' attempt to extrapolate from this allegation that the only
involvement alleged against him is the picture taking is
unavailing, reading the complaint as a whole.  As the Supplement
makes clear, the photographs were part and parcel of the package
– including backdated documents – intended to create the
illusion that the shakedown was undertaken in the ordinary
course and not as an act of retaliation.  (Id. at ¶¶ 28-29).

Based on the facts as alleged in the Supplement, and
reading the Complaint in the light most favorable to Plaintiffs,
Plaintiffs have sufficiently alleged Zanes' personal
involvement.

### ii. Constitutionally Protected Conduct

For the first element of a retaliation claim, Plaintiffs
must demonstrate that they engaged in a constitutionally
protected activity.  "[A]n individual's right of access to court
is protected by the First Amendment's clause granting the right

to petition the government for grievances." <u>Russoli v.</u>
<u>Salisbury Twp.</u>, 126 F. Supp. 2d 821, 854 (E.D. Pa. 2000) (citing
<u>California Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S.
508, 510 (1972)).  This First Amendment right is sufficient to
support a retaliation claim.  <u>See, e.g.,</u> <u>Leon v. Schaaff</u>, No.
05-4296, 2005 WL 2397241, at *3 (D.N.J. Sept. 23, 2005)
("Plaintiff has stated a claim of retaliation for his exercise
of a First Amendment right.").

Zanes argues that photographing or seizing contraband does
not violate a protected right (ECF 373-1 at 19); however, the
question is not whether his action violated a constitutionally
protected right in and of itself.  The question is whether
Plaintiffs have alleged that they are engaging in a
constitutionally protected right, and that retaliatory actions
were taken in response.  Discussion of the actions alleged is
better suited to analysis under the next, adverse action, prong.
The only question here is whether Plaintiffs were engaging in a
constitutionally protected activity.

Plaintiffs allege in the Supplement that the
constitutionally protected activities they engaged in were
acting as class representatives in a lawsuit, providing
information in support of their lawsuit, and offering testimony
in support of their lawsuit.  (Supp. at ¶ 8).  These are all

14

plainly constitutionally protected activities under the First
Amendment.

### iii. Adverse Action

In determining whether Plaintiffs have plead an adverse
action, the question is whether the action taken would "deter a
person of ordinary firmness from exercising his First Amendment
right." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)
(quoting Suppan, 203 F.3d 228, 235 (3d Cir. 2000)(internal
quotations omitted)). Further, "[r]etaliation may be actionable
. . . even when the retaliatory action does not involve a
liberty interest." Id. at 224. Thus, even where the allegedly
retaliatory action is not in itself a constitutional violation,
it may support a finding of retaliation if the action was
"motivated in substantial part by a desire to punish an
individual for exercise of a constitutional right". Id. at 224–
25.

Zanes argues that there was no adverse action "because
searching for contraband . . . is not conduct which violates a
protected interest." (ECF 373-1 at 19). Zanes further claims
that "there is no allegation that he personally engaged in
'adverse action' because no one is alleged to have suffered any
discipline or any consequences whatsoever as a result of
hoarding cleaning or sanitation materials." (Id. at 20).

Plaintiffs do not dispute that the officers are permitted to conduct searches of Plaintiffs' cells.  However, they argue instead that "the fact that Defendants admit these supplies had been in the inmates' cells in plain sight for weeks and the forensic evidence concerning the coordinated effort to prepare reports for the Court's benefit are all evidence that the shakedown was motivated by the Defendants' desire to punish Plaintiffs for their participation in this case."  (ECF 380 at 19).

Plaintiffs further assert that given the context of this case, the "shakedown" was sufficient to deter an ordinary person from exercising their constitutional rights.  (Id. at 22). Specifically, Plaintiffs explain that "[a]ccepting that some inmates had extra supplies in their cells, given the 'nuisance' nature of the supplies, as well as the fact that the inmates had these supplies with the explicit or implicit permission of the Jail, and that they were not concealing the supplies, the shakedown was an extreme, aggressive and intimidating action." (Id. at 22).

Plaintiffs' arguments are supported by allegations in the Supplement.  In describing the action in the Supplement Plaintiffs allege that "every cell was 'tossed'" and "that every additional item the inmates in C-Pod had in their cells, including items that Plaintiffs had purchased themselves from

16

the Jail commissary, as well as cleaning rags, masks and soap, was seized." (Supp. at ¶ 27). Accepting the facts alleged as true, the allegations that Plaintiffs had their cells torn apart and that they had both items previously allowed and items they spent their personal funds on taken, including personal protection equipment, is sufficient to plead an adverse action that would deter a person of ordinary firmness from exercising their rights.

Zanes also argues that "[t]he Complaint does not allege facts which indicate that any of the Plaintiffs have been discouraged or inhibited in any fashion from pursuing their claims." (ECF 383 at 18). However, this is not the standard. As explained above, the issue is whether a person of reasonable firmness would be discouraged, which Plaintiffs have sufficiently plead.

Once Plaintiffs have established an adverse action, "Defendants could rebut by showing by a preponderance of the evidence that they would have taken the adverse action even in the absence of the protected activity." Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009). Plaintiffs explain that Zanes has not rebutted the allegations of an adverse action in that "not only did the Jail not take any action to remove the supplies that had been in plain sight for weeks, including during at least twice daily cell searches, but testimony during

17

the injunction hearing established that the officers in the Jail
affirmatively allowed the inmates to have extra supplies,
including shirts and towels to use as rags to clean their
cells." (ECF 380 at 20). In his motion, Zanes states that "the
Amended Complaint also acknowledges that such searches occur
quite regularly, if not daily, and further specifically includes
the admission that the purpose of such activity is to search for
contraband." (ECF 373-1 at 18-19). Further, he explains that
"[t]he Amended Complaint also admits that supplies being hoarded
by inmates is in violation of the rules of the facility." (Id.
at 19).

While Zanes has pointed to facts demonstrating that his
actions were in line with the facility's policies, he has not
demonstrated that the action would have taken place absent the
protected activity. He does not address the allegations in the
Supplement that Plaintiffs had this alleged contraband in their
possession for at least two weeks, during the routine searches,
and it was only removed after the consent order was agreed to.

### iv. Substantial or Motivating Factor

Plaintiffs may sufficiently plead that the protected
activity was a substantial or motivating factor in the adverse
action by presenting allegations of "(1) an unusually suggestive
temporal proximity between the protected activity and the
allegedly retaliatory action, or (2) a pattern of antagonism

18

coupled with timing to establish a causal link." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016). That said, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Id. (citation omitted). Further, "'where the temporal proximity is not so close as to be 'unduly suggestive,' the appropriate test is 'timing plus other evidence.'" Id.

Zanes avers that "there is no trace in the pleadings of any motive on the part of Zanes." (ECF 373-1 at 20). Plaintiffs assert that the substantial or motivating factor element can be demonstrated by the "suggestive temporal proximity" between the protected activity and alleged retaliation. (ECF 380 at 24). Plaintiffs point out that "purported 'contraband' seized during the shakedown was supplies and items that had been in C-Pod in plain sight and visible to the officers and supervisors including during their at least twice daily cell searches." (Id.). However, the "shakedown" occurred closely following the agreement to the consent order, pursuant to which "the lawsuit was to "remain ongoing and Plaintiffs were to have a continuing active involvement in pursuing their case and in having input into the Jail's COVID-19 policies and practices." (Id. at 24–25).

Plaintiffs' arguments are reflected in the Supplement as, in addition to the timing, Plaintiffs alleged that the search

occurred and items were seized despite the fact that "it is a custom and practice in the Jail, including in C-Pod, for the inmates to have additional items, including extra blankets, shirts, sheets, towels and mattresses in their cells." (Supp. at ¶ 21). Plaintiffs allege that it was apparent for at least two weeks that Plaintiffs had these items. (Supp. at ¶ 25) ("From at least May 1, 2021 through May 10, 2021, inmates housed in C-Pod had extra supplies, including rags, cleaning solution, blankets, towels and cot mattresses, in plain sight in their cells, with the knowledge, assent, and express or implied permission of correctional officers staffing the unit, as well as with the knowledge, assent, and express or implied permission of senior correctional officers who regularly inspected or were in the housing unit, including Correctional Officer Defendants, and the Warden."). These allegations provide sufficient "other evidence" in connection with the timing of a notable event in the litigation to the "shakedown" in order to support the sufficiency of this element at the motion to dismiss phase.

Zanes alleges that Plaintiffs have failed to sufficiently plead this prong because they do not "allege facts showing an *awareness* of the actions of the Plaintiffs in pursing their claims." (ECF 383 at 18) (emphasis in original). However, Plaintiffs do not need to allege that Zanes was aware of the lawsuit or the consent order in so many words to establish this

element.  As stated above, at this stage the timing with additional supporting evidence is sufficient to infer a retaliatory motive.  See Watson v. Rozum, 834 F.3d at 424.

That said, we also note that while it is true that the Supplement does not contain the words "Zanes was aware of the litigation" the Supplement includes allegations that demonstrate that he was aware.  Specifically, Plaintiffs allege that "Defendant Zanes is the Cumberland County Jail's training sergeant who assisted in distribution and stocking cleaning supply lockers and is responsible for informing custody staff of their obligation to complete cleaning supply logs."  (Supp. at ¶ 6).  It is unclear how he could be in this role and be unaware of the litigation as the logs were an integral part of the agreed upon protocols embodied in the consent order supervised by the outside court-appointed Special Master.  (ECF 304-1).

### B. Conspiracy to Intimidate Plaintiffs, 42 U.S.C. § 1985

Plaintiffs plead their conspiracy claim under 42 U.S.C. § 1985(a), which "makes it unlawful for any person acting under color of state law to conspire to 'deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, or to injure such party or witness in his person or property on

account of his having so attended or testified....'"   (Supp. at
¶ 60 (quoting 42 U.S.C. § 1985(2)).

     As a threshold matter, "[t]o constitute a conspiracy, there
must be a 'meeting of the minds.'"  Callaway v. Small, 576 F.
Supp. 3d 232, 249 (D.N.J. 2021) (citation omitted).  In order to
establish a meeting of the minds, "direct evidence of an express
agreement is not required."  Szemple v. Rutgers, No. 10-05445,
2016 WL 1228842, at *7 (D.N.J. Mar. 29, 2016).  Rather, "a §
1985 conspiracy may also be proved through circumstantial
evidence, and a claim may be maintained where the jury could
infer from the circumstances that the Defendants had a 'meeting
of the minds.'"  Id.

     Then, "[t]o establish a claim under § 1985(2), a plaintiff
must allege one of the statute's two bases for recovery: 1) a
conspiracy to 'deter by force, intimidation or threat, any party
or witness in any court of the United States from attending such
court, or from testifying to any matter pending therein ...'; or
2) a conspiracy with the purpose of 'impeding, hindering, or
obstructing, or defeating in any manner, the due course of any
justice in any State or Territory, with intent to deny any
citizen the equal protection of the laws.' 42 U.S.C. § 1985(2)."
Richardson v. Oriolo, No. 16-135, 2022 WL 4131968, at *15
(D.N.J. Sept. 12, 2022), aff'd, No. 22-2918, 2023 WL 2597590 (3d
Cir. Mar. 22, 2023).  Importantly, "[i]t is not necessary that

the witness actually be deterred from testifying." <u>Brever</u>, 40 F.3d at 1128-29.  Conspiracy under 42 U.S.C. § 1985 is distinct from a claim of conspiracy under 42 U.S.C. § 1983.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1206 (3d Cir. 1988) ("We treat Plaintiff's section 1985 claim separately because it invokes a different analysis.").

Zanes argues that the "allegations in the Amended Complaint are broad, conclusory and do not specify acts of Zanes from which there can be an inference of the formulation of a conspiracy, or frankly the existence of a conspiracy, on the part of the moving Defendant.  These paragraphs fail to allege any facts indicating a 'meeting of the minds' as is required to state a claim for a conspiracy."  (ECF 373-1 at 25).  Plaintiffs respond that the text messages alleged in the complaint demonstrate a coordinated effort between Defendants.  (ECF 380 at 26).

First, there are sufficient allegations pointing to circumstantial evidence to demonstrate a meeting of the minds at this phase.  Plaintiffs allege that Defendants, including Zanes, took photographs of the cells and the items seized, and that this was not common practice.  (Supp. at ¶¶ 28-29).  Defendants Joynes and Warren texted about the "shakedown" using their personal cellphones.  (Id. at ¶ 30).  Defendants created an incomplete list of items seized.  (Id. at ¶ 31).  Defendants did

23

not record the event in the C-Pod Log Book.  (Id. at ¶ 32).

Defendants coordinated their reports after the fact via text

messages.  (Id. at ¶ 39).  These facts are sufficient to infer a

meeting of the minds.

Further, these facts as alleged in the Supplement are

sufficient to establish that Defendants coordinated an effort to

impede the due course of justice.  See 42 U.S.C. § 1985(2).

Through these allegations, in conjunction with the allegations

about the timing of the "shakedown," Plaintiffs have also

alleged facts showing a coordinated effort to deter Plaintiffs

from participating in Court.  (Id. at ¶¶ 3, 19, 26).  As such,

Plaintiffs have sufficiently plead their conspiracy claim as

against Zanes as well as his other alleged co-conspirators.

## IV.  CONCLUSION

For the reasons expressed above, the Court will deny

Defendant Zanes' Motion to Dismiss (ECF 373).

An appropriate Order will be entered.


Dated: June 15, 2023                s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.